CARTER *v*. MUNS.

Decided October 31, 1891.

*Sale—Rescission—Evidence.*

An agreement to rescind a written contract of purchase of land will not be enforced where the evidence to establish it is not clear and satisfactory.

Query: Is a *parol* agreement to rescind within the statute of fraud?

APPEAL from *Monroe* Circuit Court.

MATTHEW T. SANDERS, Judge.

In 1868 A. J. Muns sold certain land to W. N. Jolly, and executed a title bond, and placed him in possession. After Jolly's death in 1885 Muns took possession of the land; thereafter the administrator and heirs of Jolly brought this suit in ejectment. Muns filed an answer and "counter-claim," in effect a cross-complaint, in which he alleged that in 1871 Jolly had rescinded the contract of sale and thereafter held as his tenant, paying annual rent, until his death. He asked that the bond be canceled and his title quieted. Without formal transfer to the equity docket, the cause was tacitly treated as a chancery proceeding. At the hearing decree was rendered for defendant, from which plaintiffs have appealed. The evidence upon which the decree was based is sufficiently stated in the opinion of the court.

*Price* and *Parker* for appellants.

*J. N. Cypert* for appellee.

HEMINGWAY, J. The judgment rests upon an alleged parol rescission of a written contract for the conveyance of land. The grantee took possession under the contract to convey in 1868, and retained it until his death in 1885. The parol agreement is said to have been made in 1871 or 1872, and the appellee contends that after that time the grantee held as his tenant, under a contract to pay a stipulated rental. Whether a parol agreement to rescind a contract to convey lands is void as within the statute of frauds, or will be sustained by the ordinary rules regulating contracts, or upon

principles of estoppel, is a question suggested by this case which we deem it unnecessary to decide. *Kelley* v. *Stanbery,* 13 Ohio, 408; *Scott* v. *McFarland,* 13 Mass., 309; *Richards* v. *Richards,* 9 Gray, 313; *Bazemore* v. *Mullins,* 52 Ark., 207.

It is certainly incumbent upon the party alleging the rescission to prove a contract which by its terms has that effect; and until such contract is clearly and satisfactorily proved, it is useless to consider its legal effect.

The court below excluded all the statements in the depositions of the defendant in relation to contracts and transactions had by him with his grantee, since deceased. In so far as this cause involves the interest of the administrator, this action was clearly right; and whether the rights of the administrator and heirs are not so far identified in this case as to require its entire exclusion, may be seriously considered. But without determining this, we have considered the case made upon all the evidence, including that excluded by the court below, and our minds do not rest in the belief that any definite contract of rescission was made. If the appellee's testimony be excluded, there is an entire failure to prove such a contract; and when it is considered, the mind is at a loss as to the terms and details of the contract, and has but a vague and indefinite impression, shifting amid doubts and suspicion. His statement is, in his own language, as follows: "About 1868 I contracted for the sale of the land in controversy to the deceased. He held under this contract of sale four or five years; he turned the land back to me, saying that he could not pay for it. I then rented him the land; he was to pay $5 per acre rent and the taxes extra. Under this contract, or a similar one, he held the land up to his death. He paid me part of his rent each and every year. He would put me off for part of the rent by saying he didn't have the money." Without saying that the statement is false, its abounding generalities and entire want of detail subject it to grave suspicion, and we think it falls far short of showing a definite contract by which a

written instrument should be set aside, or upon which land titles should be founded. The statement reflects the witness' conclusion rather than any state of facts. He says Jolly "turned the land back to him," but tells nothing said by either party, and no agreement between them which, in law, would lead to that result. He may honestly entertain a very erroneous opinion of what is necessary in an agreement to transfer an interest in land, or "turn back" an equity to the holder of a legal title, and should therefore have made a clear and full statement of the facts. Rights under a written contract should not be disturbed by a parol agreement unless the proof of it is so full, complete and satisfactory that the court can say just what it was. Although, as he says, the land was "turned back" in 1871, 1872 or 1873, and Jolly continued to occupy it as his tenant until March, 1885, when he died, there is not a writing or even a memorandum in proof which tends to disclose the relation. He says he had two notes that had been placed with an attorney, but by an unfortunate coincidence he had died, and the notes could not be found. The absence of writings and memoranda is more remarkable, when it is considered that, by the appellee's statement, Jolly made only partial payments every year, leaving a balance to be carried over, which must have resulted in various settlements. It seems strange that he would continue renting to a tenant who was every year in arrears, and this indulgence is in marked contrast with his conduct in ousting the tenant's family and dismembering their home immediately after his death.

The other evidence consists of admissions made by Jolly in his lifetime to four or five parties, to the effect that he was renting the land. This testimony is to be considered with the caution usual in considering admissions casually made, and with a proper appreciation of the inaccuracies of expression and understanding, and the defects of memory and recital inherent in this character of proof. Besides, they are fully offset by the proof that he claimed to own the land.

On the other side there is the writing, which must control

until overborne by satisfactory proof. Moreover, he had made valuable improvements before the alleged rescission, which he voluntarily relinquished if his purchase was rescinded; this seems quite improbable, especially as the agreed rent for three or four years would have paid for the place.

The land divided tracts belonging to Jolly, and was a part of his home place, all in a common inclosure. With this land taken out his home was dismembered; including this it lay in a compact body. After the alleged rescission he did clearing and built houses upon it for which there is no claim that he was paid. He paid all taxes upon it, and retained the receipts, and it appears that he spoke of it, and that it was considered among the neighbors, as his land.

We think all the probabilities are against the alleged rescission and go to support the contract to convey. If the purchase price has been paid, the legal should be vested with the equitable title; if it has not been paid, the defendant is entitled to a foreclosure of the equity. Upon the testimony taken we could not determine the question of payment, and to this end further proof is required. For the error in finding that the contract to convey had been rescinded, the judgment will be reversed, and the cause remanded for the purpose of stating an account between the parties. The defendant should have credit for the contract price of the land, and if any sum was unpaid upon either installment after it matured, it should bear interest at 6 per cent.; he should be charged with all sums paid to him, whether as rent or as purchase money, and also with the rental value of the land since March, 1885, the rent of each year since said time to be credited as of January 1st next thereafter.

If, upon a statement of the account, a balance is due the defendant, it should be charged as a lien upon the land, and if not paid within a time to be fixed by the court, the land should be sold to pay it; if the full price has been paid, and there is any balance due from the defendant, it should be paid to the administrator, and in default thereof he should have execution therefor.