MASTERSON *v.* MASTERSON.

4-5864                                    139 S. W. 2d 30

Opinion delivered March 25, 1940.

*C. T. Bloodworth,* for appellant.

*E. L. Hollaway* and *J. L. Taylor,* for appellee.

SMITH, J.   R. F. Masterson, who departed this life intestate February 3, 1938, was twice married.   Five children were born to his first marriage, and four of them survived their father and were of full age at the time of his death.   His fifth child died in infancy.

The first wife was frail, the witnesses referring to her as "weakly."   On account of her health, her younger sister, Mrs. Ditto, lived with her, and was the housekeeper, and appears to have done other hard work. Mrs. Ditto was a widow and had a son who grew up with the Masterson children as a part of the family.

The first wife died November 28, 1922, and Mrs. Ditto continued to live with her son in the Masterson home as housekeeper until September 15, 1923, at which time she and Masterson were married.   On the day of the wedding, Mr. Masterson and Mrs. Ditto executed the following marriage contract:

"This agreement made and entered into this 15th day of September, 1923, by and between R. F. Masterson, party of the first part, and M. J. Ditto, party of the second part:   Witnesseth: The said parties hereto have mutually agreed to unite in marriage and in consideration of said marriage, the party of the first part, agrees that in the event of his death before the death of the party of the second part then she, the said second

party, shall take one-third as dower in her own right of all the personal property that the said first party may have at the time of his death which shall include moneys, credits and choses in action, and said second party shall also take as dower a one-third interest as provided by law, in all the real estate that said first party may own at the time of his death, if any, except the following described lands in the Western district of Clay county, Arkansas, to-wit: west half of the southwest quarter and the southwest quarter of the northwest quarter of section nine (9), township twenty-one (21) north, range four (4) east, in which said second party shall not have any interest or claim of homestead or dower whatever.

"The said second party in consideration of said marriage hereby agrees to accept the personal property and the dower interest in the real property, if any, as herein provided in lieu of all dower and homestead right that she may be entitled to by law in the event of the death of said first party before the death of said second party.

"Witness our hands this 15th day of September, 1923.

"R. F. Masterson

"M. J. Ditto."

Masterson was a prosperous farmer, and, in addition to the 120 acres of land described in the contract, owned considerable live stock and other personal property, and had in bank a deposit variously stated as being from three to five thousand dollars. He owed no debts at the time of his second marriage, and he owed none at the time of his death.

There being no debts, all the heirs being of full age, they undertook to settle the estate pursuant to the provisions of § 1 of Pope's Digest, and, to that end, sold all the personal property at a public sale, which the widow attended and at which she bought certain articles.

The testimony is in irreconcilable conflict as to the circumstances attending this sale. Mrs. Masterson had repudiated the marriage contract and, according to the testimony of the heirs, was demanding a thousand dol-

lars as compensation for rearing the children, for which consideration she offered to release all claims against the estate. She testified that this sum was promised her, and that in consideration of that promise she made no objections to the sale. The heirs testified that her offer was considered, but was rejected, and that the sale was had without objection on her part. Mrs. Masterson was allowed to select certain household and kitchen goods and other personal property before the sale. She was given a third of the proceeds of the sale, and also a third of the cash on hand in bank.

Mr. Masterson had leased the farm to one of his sons, and at the end of 1938, Mrs. Masterson demanded her share of the rents, and brought suit to recover them when her demand was refused. The pleadings in the case present the question of the validity of the marriage contract.

Mrs. Masterson denied its validity, for the reason that it was not executed in consideration of her promise to marry Masterson, and that its execution was procured under circumstances which render it invalid. She testified that she and Masterson became engaged two or three weeks before they married, and that nothing was said to her about the contract until after she had dressed for the wedding, and she and Masterson were about to leave for the home of a neighbor where the ceremony was to be performed. The minister had been engaged, and Masterson had the marriage license in his pocket. He then stated that he wanted his children to have his home, and she stated that she only wanted to fare as well as the children, and Masterson stated he wanted her to do so, and she signed the contract without reading it, because she had confidence in him.

The chancellor's finding indicated that he did not credit this testimony. Had he done so, he should have held the contract ineffective, but he found the contract was in full force and effect. The findings were also against Mrs. Masterson on the other issues herein discussed, and her complaint was dismissed as being without equity, and from that decree she has appealed.

In the case of *Miles* v. *Monroe,* 96 Ark. 531, 132 S. W. 643, Judge FRAUENTHAL said that a marriage settlement must be upon consideration of the promise to marry, and that "if it was made after such engagement was consummated it would not be an inducement to or a consideration of the contract of marriage. *Chambers* v. *Sallie,* 29 Ark. 407."

It was said, also, in the case of *Davis* v. *Davis,* 196 Ark. 57, 116 S. W. 2d 607, "that in order for antenuptial contracts to be valid, they must be freely entered into, and must not be tainted with fraud."

As Masterson is dead, his version of the circumstances under which the contract was executed cannot be given. But other testimony refutes that of Mrs. Masterson, which is not corroborated by that of any other witness. The contract was prepared by the late Judge Felix G. Taylor, a leading lawyer of that section of the state for many years, and manifests that he was familiar with the law applicable to the contract, and if its recitals are true it was made in consideration of the engagement to marry. There was testimony also to the effect that no fraud or deception was practiced in procuring the execution of the contract. It does not appear that the chancellor's finding on this subject is contrary to the preponderance of the evidence.

Mrs. Masterson also testified that some years after her marriage she became dissatisfied with the contract, and so advised her husband, and upon his refusal to rescind it she left his home, and that after living apart from him for a few weeks she was induced to return to his home by his agreement to rescind the contract. Witness Christian corroborates her in this respect.

We are of the opinion, however, that, even though the contract, relating, as it does, to real estate, could be rescinded by a parol agreement to that effect, without violating the Statute of Frauds (which we do not decide, *Carter* v. *Muns,* 55 Ark. 73, 17 S. W. 445), the finding that the contract was not rescinded is not contrary to the preponderance of the evidence. It is undisputed that the contract was not in fact destroyed as Mrs. Masterson testified that it was agreed it should be.

It was found in Masterson's lock box at the bank, and there is very persuasive testimony to the effect that Mrs. Masterson knew it would be found there after Masterson's death. During Mrs. Masterson's absence from her husband's home she discussed her differences with her husband with several persons, her attorney being among that number. The complaint she made to the persons, other than the attorney, related to a policy of insurance which Masterson had taken out on her life, in which her son was named as one of the beneficiaries. Masterson had borrowed the cash surrender value of the policy, and was about to let it lapse.

We conclude, therefore, that the chancellor's finding that the complaint was without equity is not contrary to the preponderance of the evidence.

It will be observed that the contract was made in lieu of any right of homestead and dower in the lands then owned by Masterson, and he did not acquire any other lands. But the contract did not require Mrs. Masterson to waive her statutory allowances, which are not dower but are in addition to dower. The settlement made with Mrs. Masterson after the sale shows that only her dower interest was accounted for, she being given one-third of the cash on hand and one-third of the proceeds of the sale. She was allowed to select certain household and kitchen furniture, beds, etc., but these are a part of her allowance under § 84, Pope's Digest. In addition, the estate being solvent, she was entitled to personal property of the value of $150 under § 86, Pope's Digest, and was also entitled to the benefits of the provisions of § 80, Pope's Digest. However, the widow should be charged with the value of any items to which she is entitled under the provisions of §§ 80, 84, and 86, Pope's Digest, which have been given to her, as she is not entitled to these items and their value also. The testimony is to the effect that some of these items were given to the widow by the heirs. The value thereof should be ascertained and taken into account in determining the sums due the widow under the sections above cited.

Mrs. Masterson did not claim these allowances as provided by § 85, Pope's Digest, but we think she was

deterred from doing so by her expectation that she would be paid the thousand dollars for which she was contending in satisfaction of her demand against her husband's estate, and for the same reason she made no protest against the public sale of the personal property. *Henry* v. *Tillar*, 70 Ark. 246, 67 S. W. 310.

We conclude, therefore, that Mrs. Masterson should have the benefit of these statutory allowances, and the decree of the court below will be modified in this respect, and the cause will be remanded for that purpose.