WILLIAMS *v.* JONES, SPECIAL ADMINISTRATOR.

4-7553                                        186 S. W. 2d 160

Opinion delivered March 12, 1945.

304

W. B. Alexander, for appellant.

Bridges, Bridges, Young & Gregory, for appellee.

McHANEY, J. The late W. D. Jones, on June 18, 1930, entered into a written contract with appellants, Effie Williams and Maggie Trice, sisters, for the sale to them of the southeast quarter of block 36 of Dexter Harding's Addition to the City of Pine Bluff, for a consideration of $1,650, of which $100 was paid in cash, and the remainder was to be paid at the rate of $15 per month beginning July 15, 1930, with 10% interest on each installment. There was a provision in said contract that failure to pay any monthly installment and the interest thereon shall avoid the rights of appellants under the contract, and that they should thereafter be tenants from month to month, and that Mr. Jones could then enter and take possession, if he so desired. It provided that appellants should pay all taxes and local improvement assessments, and that if they failed to do so, Jones had the right to pay same and charge it in the next installment coming due. There were the other usual provisions found in such contracts.

About three months later Jones died, leaving his widow and appellees, two sons who later conveyed their interest in said property to their mother. M. L. Jones was appointed administrator of his father's estate shortly after his death, began collecting the $15 payments from appellants, and continued to do so until the latter part of 1931, when his brother began collecting them. The latter collected them until December, 1932, after which time

there were made no $15 payments. Up to that time the payments were indorsed on the copy of the contract held by appellants, but thereafter receipts were given for such payments as were made, but the Jones brothers kept no record of their own of such payments. In 1935, M. L. Jones went to see appellants, they being delinquent in their payments, to discuss the situation with them and had a conference with Effie Williams. She told him, so he testified, they would not be able to pay out the contract and "would like to turn the place back." Thereafter, they made no further payments on the contract, but were to pay $8 per month as rent. He testified: "It was the complete understanding. We agreed that she would turn the place back and the rent would be $8 a month."

Thereafter the receipts given by M. L. Jones for payments showed they were for rent. Appellees paid all taxes, insurance and made certain repairs. In October, 1943, M. L. Jones wrote Effie the property had been sold to another and requested them to move at once. On November 3, 1943, appellants had their copy of the contract recorded and on November 22, 1943, appellees' mother brought this action to cancel said contract as a cloud on her title. Trial resulted in a finding that the contract of sale was cancelled and rescinded by mutual agreement in 1935, and that the relation between them since that time has been that of landlord and tenant, and a decree was entered as prayed. Mrs. Jones died pending this appeal and appellees are substituted for her.

Appellants make two arguments for a reversal of this decree: one, that the evidence was insufficient to justify the finding that there was a cancellation of the contract by mutual agreement; and, two, there could be no cancellation of the instrument by parol agreement, especially under the facts in this case.

1. We think the overwhelming weight of the testimony supports the court's findings, and, assuming that the clear and decisive rule applies, we think it measures up to that standard. Both the Jones brothers testified very positively that the sale contract was cancelled by

agreement with Effie in 1935, and that thereafter she was to pay $8 per month as rent. It is undisputed that Effie transacted all this business for herself and her sister Maggie who stated she knew nothing about any of the arrangements. While Effie denies that any such agreement was made in 1935, or at any other time, she is contradicted by many undisputed facts concerning the dealings between the parties which tend to show quite conclusively that as early as 1935 appellants no longer claimed to own this property, but held it only as tenants. A few of these facts are as follows: (1) All taxes and insurance premiums were paid by appellees from 1930 to 1942, except $10 in 1930 paid by appellants; (2) appellants requested appellees to make repairs on the house and certain repairs were made in 1937 or 1938 at a cost of about $55, and as late as 1943 other requested repairs were refused; and (3) a number of receipts for payments made after 1935 were introduced and all but one showed they were for rent. All these facts are inconsistent and out of harmony with a claim of ownership and we agree with the court that appellants abandoned their purchase contract as early as 1935 and were thereafter tenants.

2. On the question of the right to cancel by parol agreement a prior written contract of sale and purchase of real estate, appellants cite *Carter* v. *Muns,* 55 Ark. 73, 17 S. W. 445, and *Friar* v. *Baldridge,* 91 Ark. 133, 120 S. W. 989. In the Carter case the court said: "Whether a parol agreement to rescind a contract to convey lands is void as within the statute of frauds, or will be sustained by the ordinary rules regulating contracts, upon principles of estoppel, is a question suggested by this case which we deem it unnecessary to decide."

Appellants did not plead the statute of frauds as an affirmative defense in their answer and we have held that it cannot be availed of unless pleaded. *S. H. Kress Co.* v. *Moscowitz,* 105 Ark. 638, 152 S. W. 298, and cases there cited. But assuming that the demurrer filed by appellants and overruled by the court was sufficient to raise the question, we have several times held that a verbal recision of a written contract is not invalid as

being within the statute under certain circumstances. In *Atkinson* v. *Thomas,* 138 Ark. 47, 210 S. W. 779, it was held that such a "recision of an option contract to purchase land is available in equity to repel a claim upon that contract." See, also, *Eagle* v. *Pettus,* 109 Ark. 310, 159 S. W. 1116; *Robertson* v. *Lain,* 168 Ark. 210, 269 S. W. 574.

Moreover, there was a part performance under the oral recision of the contract, such as constructive delivery of the possession, payment of rents for many years, and asking for and receiving improvements, failure to pay taxes and insurance, as would take the oral agreement out of the statute. At least the oral agreement has been acted on for several years. 49 Am. Jur., p. 617, § 306.

The decree is correct and is accordingly affirmed.