310

VAUGHAN *v.* SUTTON.

5-2953                                     365 S. W. 2d 863

Opinion delivered March 25, 1963.

*Terral, Rawlings & Matthews,* for appellant.

*Catlett & Henderson,* for appellee.

CARLETON HARRIS, Chief Justice. This suit involves the question of whether a certain deed should be cancelled. Stephen Vaughan was the owner of a certain 40 acres in Pulaski County, Arkansas. After the death of Vaughan, and through a division of this property by the exchange of deeds, a daughter, Lee Anna Vaughan, became the record owner of 10 acres (of the 40), which is the property in dispute in this litigation. Lee Anna died

on February 5, 1951, leaving a son, Charles Lafayette (hereinafter called Lafayette), as her only heir. Lafayette, who, according to the testimony, drew Welfare benefits because of mental deficiency, sometimes worked at the Sutton Grocery, with which some of his relatives traded.

In the meantime, the property here involved had forfeited because of the non-payment of taxes, and Robert L. Kumpe purchased same at a Sheriff's Tax Sale, and on January 7, 1950, received a deed to the property from the Pulaski County Clerk. After the death of Lee Anna Vaughan, Lafayette and other relatives learned of the sale of the 10 acres to Mr. Kumpe. Lafayette, together with Ollie Vaughan Fuller, a cousin, went to Mr. H. M. Sutton, Sr., and requested his aid in getting the property back. Sutton, according to the evidence, promised to help, and, thereafter, events admittedly occurred as follows:

About April 7, 1951, Kumpe and wife, at the request of Sutton, executed a quitclaim deed, conveying the property to Lafayette; this deed was delivered to Sutton upon the latter's paying to the grantors the sum of $50.00 in cash. The deed was not recorded. On April 27, 1951, Lafayette died intestate, leaving appellants as his heirs at law. Sutton refused to deliver to appellants the deed executed by Kumpe and wife, and refused to accept payment of the debt (occasioned by the payment of the money to Kumpe by Sutton on behalf of Lafayette at the time of the delivery of the deed). On May 7, 1951, Kumpe and wife, at the request of Sutton, executed and delivered to the latter another quitclaim deed, conveying the same property to Sutton that Kumpe had previously deeded to Lafayette. This deed was recorded the following day.

On December 6, 1952, appellants, Stephen Vaughan, an uncle of Lafayette, William Vaughan, an uncle, and Ollie Vaughan Fuller, Aretha Harris Odom, Helen D. Harris, Elsie Harris Terry, and James Russell Harris, cousins of Lafayette, instituted suit against H. M. Sutton, Sr., and his son, H. M. Sutton, Jr., alleging that the defendants had fraudulently obtained a deed from R. L.

Kumpe in the name of H. M. Sutton, Sr., in an effort to defraud appellants of their property; that they (appellants) had offered to pay the balance due on the property, but that the defendants had refused to accept same, and they prayed that, upon depositing into the registry of the court the amount found to be the balance due from Lafayette, H. M. Sutton, Sr. be ordered to execute his deed, conveying the property to them. On December 8, a notice *Lis Pendens* was filed by appellants, setting out that appellants were claiming the property under a deed executed by Kumpe to Sutton, Sr., and that Sutton was holding as a trustee for their benefit.

On December 20, H. M. Sutton, Jr., filed a separate answer, setting up that he had no personal knowledge of the transaction, had nothing to do with it in any manner, and asking that the complaint be dismissed as to him. H. M. Sutton, Sr., on the same date filed a motion to make the complaint more specific. After filing one amendment to their complaint, appellants, on April 10, 1953, filed a second amendment stating, in effect, that they had mistakenly sued H. M. Sutton, Jr., that he was in no way involved in the litigation; ''that the party they intended to sue, and against whom they now adopt their original complaint, is H. M. Sutton, Sr.,'' and relief was sought, as originally prayed, against this defendant. A new summons was issued, and the Return of the Sheriff of Pulaski County reflects that H. M. Sutton, Sr., was personally served on April 13, 1953. From that time to the day of trial, Sutton never filed any sort of pleading. On May 17, 1954, Sutton and wife conveyed the property to appellees, W. R. Davis and Lula M. Davis for a cash consideration of $1,500.00. Thereafter, in May, 1955, Davis and wife filed a motion alleging that they had purchased the property from Sutton, were the real parties in interest, and should be made parties defendant. On September 7, 1955, the motion was granted. The Davises then filed an answer, denying all material allegations of the complaint.

Appellants then further amended their complaint by asserting that Davis and wife had received the deed to the property ''long after the suit had been filed and with

notice thereof.'' The court was asked to cancel the deed from Sutton to these defendants. On June 21, 1962, the cause was tried,[1] and at the conclusion thereof, the court dismissed the complaint for want of equity, and quieted and vested title in the appellees, W. H. Davis and Lula M. Davis. From the decree so entered, appellants bring this appeal.

We are firmly and unhesitatingly of the opinion that this decree should be reversed, and we think that appellants have established their case by evidence that is clear, cogent, and convincing. Lincoln Fuller, who had married Ollie Vaughan, testified that Lafayette had worked for Sutton, and on learning of the forfeiture of the land, had asked Sutton for his help. Fuller testified that he was present and heard Lafayette make the request for financial assistance in recovering the property, and heard Sutton agree to render the aid. Ollie Vaughan Fuller testified that she later heard Sutton tell Lafayette that he had obtained the deed from Kumpe, and would turn it over to her cousin ''when he finished paying him the money what he owed him.'' Robert L. Kumpe, a postal transportation clerk, testified that he bought the property in question at the tax sale, and subsequently received a deed from the clerk. Thereafter, he was contacted by Sutton who desired to purchase the property for Lafayette. From the record:

''Well, this fellow Lafayette, I don't even remember whether that was his last name or first name, but anyway, it stuck in my memory because you know that French name for a colored fellow, I thought was kind of peculiar. * * * And Lafayette owed him some and he was — wanted me to make out the deed to Lafayette and he would act as his agent.''

The witness then testified that he and his wife signed a deed, conveying the property to Lafayette, and the Notary Public who took the acknowledgement, delivered it to Sutton. Kumpe stated that Sutton later called him again and advised that Lafayette had died,

---

[1] There is no explanation in the record of why the case remained pending for 9 years after the second summons was served on H. M. Sutton, Sr., and 7 years after the motion filed by Davis.

"So because Lafayette owed him some money, he wanted me to make out the deed to him, make another deed to him. * * * Well, it was kind of aggravating. It was against my policy. My policy was when I bought this land I let the people that owned it, I let them have it back for taxes and a little interest, but anyone else why I would appraise it you know and get some value out of it, but he was so insistent and I was kind of aggravated with him anyway and my wife was kind of sick, so I went against my policy and he had another deed made out. .* * * I carried the deed over to him, Mr. Sutton, and he said he would dispose of the other deed."

Kumpe was positive that at the time the first deed was given, Sutton had stated that he was acting for Lafayette, and it is totally undisputed that the first executed deed named Lafayette as the grantee.

Testimony on the part of appellants reflected that following the death of Lafayette, Sutton advised representatives of appelants,

"You will have to pay me $40.00[2] before you can get these papers."[3] Ollie Vaughan Fuller testified that when this amount of money was offered to Sutton, he refused it and stated that he would have to receive $60.00; that Sutton said,

"Don't be in a hurry. We have plenty of time. What do you all want to be in a hurry for?"

Subsequently, Sutton refused the $60.00 when it was tendered to him.

Appellees first argue that there was no writing signed by Sutton to the effect that he would hold the deed and deliver same to Lafayette upon repayment, and that the agreement therefore was in violation of the Statute of Frauds. In answering this contention, we need go no further than to state that the Statute of Frauds was not

---

[2] It is not clear from the record whether Sutton paid Kumpe $40.00 or $50.00 for the first deed.

[3] This statement had reference to the deed and a mortgage which appellants testified was given to Sutton by Lafayette to secure the money advanced by Sutton for the purchase from Kumpe, but the execution of the mortgage was not established by competent evidence.

pleaded, and we have held on numerous occasions that that statute is an affirmative defense which cannot be relied upon unless specifically pleaded. *William* v. *Jones, Special Administrator,* 208 Ark. 303, 186 S. W. 2d 160. *S. H. Kress Co.* v. *Moscowitz,* 105 Ark. 638, 152 S. W. 298, and cases therein cited.

Appellees then assert that neither a resulting trust, nor a constructive trust,[4] was created for the reason that the misrepresentation that creates a trust of this character must be made before, or at the time, legal title is acquired by the promissor; appellees contend that the circumstances herein do not bring into being a constructive trust because the legal title (in the first deed) was actually placed in Lafayette, though that grantee paid no part of the consideration. From the brief:

"Here, H. M. Sutton, Sr., procured the execution of the first deed by Robert L. Kumpe conveying the property to Charles Lafayette, and H. M. Sutton, Sr., paid the full consideration for such conveyance and received and kept the deed. Charles Lafayette never paid any part of the consideration. After the death of Charles Lafayette, H. M. Sutton, Sr., received a new deed from Robert Kumpe conveying the lands to H. M. Sutton, Sr. There was no fraud, actual or otherwise, in the transaction.

"At the time Charles Lafayette allegedly entered into negotiations with Sutton to assist him in acquiring Kumpe's tax title to the property, neither Lafayette nor these Appellants had the slightest right, title or interest therein; the time for redemption from the tax sale having expired during the lifetime of Lee Anna Vaughan."

Actually, it is not necessary, in determining this litigation to enter into a detailed discussion of whether either a resulting or constructive trust was created, for the evidence establishes unquestionably that Kumpe and wife executed the first deed to Charles Lafayette. This means that at the time of the second deed, Kumpe had no title to convey. Therefore, the second deed, naming

---

[4] Definitions of a resulting trust and a construction trust are cited in *Mulligan* v. *Payne,* 232 Ark. 922, 341 S. W. 2d 53

Sutton as grantee was of no effect. Of course, since the deed was not recorded, a *bona fide* purchaser could have obtained a valid deed from Kumpe, but Sutton (having the deed in his possession) had full knowledge that Lafayette held the legal title. This actually disposes of the litigation, but we think also that a "trust *ex maleficio*"[5] or constructive trust was raised under the circumstances of this csae. It is true that normally, when a constructive trust arises, legal title has been placed in one person, though the beneficial interest is to be enjoyed by another person, but we do not consider this an absolutely essential element. In *Wofford* v. *Jackson,* 194 Ark. 1049, 111 S. W. 2d 542, this court, quoting from Pomeroy's Equity Jurisprudence, said:

" 'Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, * * * They arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility to his beneficial rights of ownership.' "

At any rate, equitable relief should not be refused because of technical distinctions, where the evidence firmly establishes that fraudulent acts have been committed, and equitable principles violated. Here, it is plain that Sutton advanced the money (which was paid to Kumpe) for the benefit of Lafayette, and was holding the deed as security for the repayment of the money; it even appears that Kumpe might not have sold the property except for the fact that it was being returned to the original owner.

According to the testimony of Lee Smith, a real estate salesman for 20 years in the city of Little Rock, the 10 acres involved in this litigation, if sold together with the other 30 acres, would be worth $1,000.00 per acre; if sold separately from the other 30 acres, the property would have a value of $750.00 per acre. The witness

---

[5] According to Bouvier's Law Dictionary (3rd Revision) Vol. 1, "on account of misconduct."

stated that in 1951, if sold with the 30 acres, the land would have been worth approximately $250.00 per acre, and if sold separately, should have brought $200.00 per acre.[6] Sutton did not see fit to file an answer denying the allegations of the complaint, and we think the evidence clearly establishes that, upon learning of the death of Lafayette, he saw an opportunity to acquire the title for himself, and accordingly "put off" the appellants until a second deed could be acquired from Kumpe.

W. R. Davis and Lula M. Davis, appellees herein, were not innocent purchasers, having purchased the property from Sutton on May 17, 1954. This was a year and a half after the first suit was filed by appellants; a year and a half after the notice *Lis Pendens,* and over a year after the complaint was amended and a new summons served on Sutton. Davis testified that he bought the property through a realtor and "thought he was buying it from Vaughan." He stated that he had bought a lot of property without an abstract, and was "gambling" on this property.

In accordance with the views herein expressed, the decree is reversed and the cause is remanded to the Chancery Court with directions to cancel the deed from Kumpe to Sutton, to cancel the deed from Sutton to the Davises, and to take the proper and necessary steps to invest title to the property here involved, in the heirs of Charles Lafayette, as prayed by appellants.

---

[6] It was stipulated between the parties that O. D. Burroughs possessed practically the same qualifications as those of Smith, and his testimony would be the same as that of Smith.