CLAUDE FARRAR ET UX *v.*
MRS. EMILY L. KINCHELOE

5-5380                                    460 S. W. 2d 800

Opinion delivered December 14, 1970

*Gean, Gean & Gean,* for appellants

*Don Smith* and *Franklin Wilder,* for appellee.

CONLEY BYRD, Justice. The sole issue on this appeal is whether a savings account at the First Federal Savings & Loan Association in Fort Smith, Arkansas, was solely owned by appellee Mrs. Emily L. Kincheloe or jointly owned by Mrs. Kincheloe and her adopted daughter, appellant Inez Farrar. The trial court ruled that it was solely owned by Mrs. Kincheloe. Appellants Claude Farrar and his wife Inez rely upon *Hobbs Admr.* v. *Collins,* 234 Ark. 779, 354 S. W. 2d 551 (1962), as authority for reversing the trial court.

The record shows that Mrs. Kincheloe had no children of her own. Prior to Inez Farrar's marriage and prior to Mrs. Kincheloe's migration to Oregon, Inez Farrar lived with Mrs. Kincheloe. In 1958, Mrs. Kincheloe moved to Oregon where she worked as a seamstress. She saved and accumulated $15,000 which she deposited in the First Federal Savings & Loan Association of Salem, Oregon, in the name of: "Emily L. Kincheloe or Inez Farrar, not as tenants in common but with right of survivorship." Mrs. Kincheloe, with the consent of Mrs. Farrar, instituted adoption proceedings in Oregon by which Inez Farrar became Mrs. Kincheloe's adopted child. Whenever Mrs. Kincheloe deposited money in the savings account she would write Mrs. Farrar telling of the addition to the savings account. One of these letters dated Dec. 6, 1968, is as follows: "We (You and I) have $15,000 savings in First Federal Savings & Loan Association". Another part of the same letter says, "We also have $7,800 in checking at the University Branch on State Street near where I live. I'm sending you checks on this bank." In December 1968, Mrs. Kincheloe moved to Cameron, Oklahoma, (near Fort Smith), and lived in

a mobile home close to Mrs. Farrar's home. At this time Mrs. Kincheloe was 79 years of age.

Sometime around the last of March 1969, Mrs. Kincheloe suffered a lapse of memory while drinking a cup of coffee in Mrs. Farrar's home. Because she blacked-out, Mrs. Farrar took Mrs. Kincheloe to the hospital where she remained a few days. Not long thereafter Mrs. Kincheloe accused Mrs. Farrar of looking in on her door at 2:00 in the morning.

Mrs. Kincheloe's testimony was that she had possession of the Oregon savings certificate until May 14, 1969. She said that on May 13, 1969, she had some callers at her trailer, one of whom was a preacher, and that as a result of that visit she signed a pledge to the church. Mrs. Kincheloe designated this pledge as a $5,-000 donation. She said that the next day after she signed the pledge the appellants, together with their son and his wife, came over and wanted the paper she had signed. According to Mrs. Kincheloe, at that time appellants, without her permission, took not only the church pledge but also the savings certificate, her marriage license and purse.

On May 15, 1969, in the office of her attorney Inez Farrar signed a request for withdrawal of the money from the Oregon bank. Upon receipt of the money Mrs. Farrar deposited it in her name as trustee in the First Savings & Loan Association of Fort Smith. Thereafter, Mrs. Kincheloe employed an attorney, Ralph Robinson, who accompanied her to the offices of Mr. Roy Gean. At the conference in Mr. Gean's office Mrs. Kincheloe said that she asked that the money be put back in the Fort Smith savings and loan bank just like it was in the Oregon bank. As a result of that conference the money was placed in the Fort Smith Savings & Loan in the name of Inez Farrar and Emily L. Kincheloe—however Mrs. Farrar and her attorney kept possession of the savings certificate. In Sept. 1969, Mrs. Kincheloe employed her present counsel and filed suit to recover the $15,000.

Mrs. Farrar's testimony relative to the May 13 and 14 incident was that Mrs. Kincheloe came over to her house and told her that the preacher and two other men were at Mrs. Kincheloe's house and that she was going to let the preacher have $5,000 on 6% interest, "and that is more than I could get any place." Mrs. Farrar's testimony about receipt of the certificate is, "Mom gave it to me and told me to take it and put it in my safety deposit box. I had it in my possession at the time." Mrs. Farrar denied that she broke into the trailer or that she took any papers away from Mrs. Kincheloe. When asked about the purse, Mrs. Farrar stated: "She gave me her purse and her money to keep for her just like she gave it to me the day she went to the hospital."

In the *Hobbs* case, relied upon by appellants, the facts showed that Gayler gave money in a bank to Winnefred by giving bank books to Winnefred's mother to be kept for her, together with a large number of U. S. bonds purchased by Gayler and made payable to himself and Winnefred. When Gayler's attention was called to the fact that Winnefred's name was not on some of the bonds, he returned the bonds to the government and had them reissued in both names. Other evidence showed that Gayler had stated repeatedly that he had given the money and bonds to Winnefred. In upholding the trial court's finding that there was a completed gift we said: "If the gift be intended *in presenti,* and be accompanied with such delivery as the nature of the property will admit, and the circumstances and the situation of the parties render reasonably possible, it operates at once, and, as between the parties, becomes irrevocable."

Mrs. Kincheloe's testimony here is that the savings certificate from the Oregon bank was taken from her by force. Mrs. Farrar's testimony is that the certificate was delivered to her along with the marriage certificate and purse for safekeeping. As we review the record, the testimony is more than ample to sustain the trial court's finding that there was no gift *in presenti* to appellant Mrs. Farrar. Rather it appears to us that Mrs. Kincheloe

was following the advice of her Oregon counsel in doing some estate planning.

Affirmed.