W. E. FARRAR and Dot Farrar, Plaintiffs,

v.

Claude FARRAR and Inez Farrar, Defendants.

Civ. A. No. FS 69 C–115.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

May 17, 1971.

**1134**

Eddie N. Christian of Wiggins & Christian, Fort Smith, Ark., for plaintiffs.

James E. West of Daily, West, Core & Coffman, Fort Smith, Ark., for defendants.

## MEMORANDUM OPINION

PAUL X. WILLIAMS, District Judge.

This matter was heard before the Court without a jury on the Complaint of the Plaintiff, Mrs. Dot Farrar against the Defendants, Claude Farrar and Inez Farrar, who are her son and daughter-in-law. The relief sought by Plaintiff is the reconveyances of the following described property:

Lots 4, 5, 8 and 9, Block 7, Sulphur Springs Addition to the City of Fort Smith;

Lot 5, Block 1, Harder Place Addition to the City of Fort Smith;

The Southeast ten (10) acres of the South Half (S/2) of the Northwest Quarter (NW/4) of the Northeast Quarter (NE/4), Section 19, Township 8 North, Range 27 East, more particularly described as follows: Beginning at the Southwest corner of the Northwest Quarter (NW/4) of the Northeast Quarter (NE/4) of said Section 19, Township 8 North, Range 27 East, thence running East 440 yards, thence North 220 yards, thence Southwest an angle of 60 degrees 1476 feet to the point of beginning; the Southwest Quarter (SW/4) of the Northeast Quarter (NE/4), and the Northwest Quarter (NW/4) of the Southeast Quarter (SE/4), the Southwest Quarter (SW/4) of the Southwest Quarter (SW/4) of the Northeast Quarter (NE/4) of the Southeast Quarter (SE/4), and the East Half (E/2) of the Southwest Quarter (SW/4) of the Southeast Quarter (SE/4), less two acres in the Northwest corner thereof, more particularly described as follows, to-wit: Beginning at the Northwest corner of the Northeast Quarter (NE/4) of the Southwest Quarter (SW/4) of the Southeast Quarter (SE/4) of said Section 19, Township 8 North and Range 27 East, thence running South a distance of 16 rods, thence East a distance of 20 rods, thence North a distance of 16 rods, thence West a distance of 20 rods to the point of beginning, all of said real estate being in Section 19, Township 8 North, and Range 27 East, in LeFlore County, State of Oklahoma, being 110 acres, more or less.

A part of the West Half (W/2) of the Northwest Quarter (NW/4) of Section 9, Township 7 North, Range 32 West, as follows: Beginning at a point 950 feet South of the Northwest corner of said Section 9, thence East 233.5 feet; thence North 6 degrees and 57 minutes East 326 feet; thence West 273 feet; thence South 323 feet to a point of beginning, containing 1⅞ acres more or less; less the North 200 feet of said tract and less public roads; all of said lands lying in Sebastian County, Arkansas.

$9,000.00 deposited in First Federal Savings & Loan Association, Fort Smith, Arkansas.

$7,000.00 deposited in Superior Federal Savings & Loan Association, Fort Smith, Arkansas.

$1,000.00 deposited in Peoples Loan & Investment Company, Fort Smith, Arkansas.

39 head of black angus cattle, consisting of 23 cows, 1 bull and 15 calves.

A 1957 Chevrolet pickup truck.

Various and sundry antique furniture.

And for an accounting of the rents, royalties and profits thereof.

This suit was originated by W. E. and Dot Farrar, husband and wife, against their only child, Claude Farrar and Claude's wife, Inez Farrar. During pendency of trial W. E. Farrar died, leaving Dot Farrar as the sole plaintiff and Claude Farrar, her son and his wife, Inez, as the defendants.

W. E. Farrar, during his lifetime, was subject to extreme nervousness and it was necessary at one time for him to be treated in a mental institution. Proof was offered that W. E. Farrar was considered to be a dangerous man and that friends and neighbors and even Mrs. Dot Farrar, his wife, were afraid of him when he was upset.

Mrs. Dot Farrar is past 73 years of age. She is alert in mind and body, but full of idiosyncracies. While a young lady she had a falling out with her father and refused to speak to him for a period of 30 years; and while the difference in opinion may have been serious, it is unusual that a daughter and father require 30 years to adjust a quarrel.

Claude Farrar, the son, was born with both a speech and a hearing impediment. He is now a strong, robust man 57 years of age, active and not afraid to work. By reason of his birth defects he was more reliant on his mother than ordinary, and after his marriage more reliant on his wife, Inez, than he would have ordinarily been, had he not been victim of the hearing and speech impediments.

Mrs. Dot Farrar, although bringing this lawsuit against her son, Claude, is still solicitous about him and his welfare. She referred to his birth defects and how they had tried to compensate for them and afford protection to Claude.

Claude and Inez have a profitable farming operation near Poteau, Oklahoma. Both Inez and Claude work at making their ventures go and Inez furnishes the hearing and speaking faculties in which Claude is deficient. They have two children, a son who sides with them in this lawsuit and a daughter who takes the part of the grandmother against her parents.

W. E. Farrar and Dot Farrar operated and Dot Farrar still operates a store and market in Fort Smith. By thrift and hard work W. E. Farrar and Dot Farrar accumulated some valuable properties and had $17,000.00 in savings. They had several head of cattle on their own farmland and a 1957 pickup truck.

Claude, as their son and heir, worked at the store when asked to do so, ran errands for his parents and was available to do whatever was required to be done. At the same time he and his wife, Inez, were operating their own farming venture and stock farm. The evidence is conclusive that Claude was and is a willing and diligent worker but reliant upon Inez for leadership and supervision.

In March of 1965, W. E. Farrar had an automobile accident with Hubert Cantwell which the Farrar family feared might bring about judgment in favor of Cantwell against the Farrars that would exhaust all of the Farrar resources. W. E. Farrar, Dot Farrar and Claude Farrar conferred about the matter and decided they should consult attorneys and make some protective conveyances. They called on the law firm of Gean and Gean in Fort Smith and after discussion executed deeds and bills of sale and assignments by which title to all property owned by W. E. Farrar and Dot Farrar was transferred to Claude and Inez Farrar. Honorable Roy Gean, Jr., testified that Dot Farrar cried when she signed and executed the papers and that it was understood that the consideration for the conveyance was the agreement of Claude Farrar to look after his parents.

There was no other consideration paid. In truth, Hubert Cantwell actually obtained a judgment against W. E. Farrar, which was paid or settled in a comparatively short time.

Mr. Gean also testified that he never met Claude Farrar until the day they came to his office to execute the instruments conveying the property; that Mrs. Dot Farrar did most of the talking; that Mrs. Dot Farrar was the one who brought the complaint to his office when Cantwell brought the suit over the automobile accident.

W. E. and Dot Farrar continued in possession of the store in Fort Smith and the land and rent houses in Arkansas. Claude and Inez took the $17,000.00 cash and paid it on some land they were buying for themselves. They also took possession of the cattle and the Oklahoma land. They have looked after the cattle and now have on hand 19 cows, 19 heifers, 5 calves and 1 bull, which they identify as being the Dot Farrar cattle. They leased the Oklahoma land to their son, Johnny, (who pays a yearly lease of $75.00 to Dot Farrar) who has a long term lease from Claude and Inez and has improved the dwelling house some $8,000.00 so that it is a desirable dwelling place.

Claudetta, the daughter of Claude and Inez, has possession of the 1957 pickup with the permission and approval of Mrs. Dot Farrar. Claudetta takes the side of her grandmother against her own parents and is convinced that her parents should return the property to Dot Farrar. She loves and respects her parents and her brother Johnny, but feels that the entire transaction has been unjust to her elderly grandmother.

An understanding of the background of this case necessitates a reference to the case of Farrar v. Kincheloe, 249 Ark. 678, 460 S.W.2d 800 (1970), since Emily Kincheloe testified in this case and the Arkansas State Court case involved Inez Farrar, a defendant in this case.

In that case Inez Farrar contended that Emily Kincheloe made a gift of $15,000.00 to her. The Arkansas Supreme Court found against the contention of Inez and sustained the finding of Honorable Warren Kimbrough, Chancellor of Crawford County, Arkansas that there was no delivery of a savings and loan account sufficient to constitute a present gift to Inez.

In the case at bar, Emily Kincheloe testified that she was 83 years of age; that she adopted Inez in 1966, after having helped rear her when she was younger; that while she was in Oregon she had voluntarily placed $15,000.00 in a joint account with Inez; that she bought a house trailer and it was set next to the front porch of Inez's house; that everything went fine until she decided to donate $5,000.00 (one-third of her life savings) to a church; that Claude made the preacher leave; that Inez changed the joint account to an account in Inez's name as trustee, but then changed it back to a joint account; that when it was changed back to the joint account they put Inez's name first instead of Mrs. Kincheloe's name; that she (Mrs. Kincheloe) had a stroke prior to the time she attempted to give her money away. Her testimony is to the effect that Inez Farrar said that Claude Farrar and Inez had decided they were entitled to own the parent's property "right now" and not wait until the demise of their elders.

This disposition on the part of Claude and Inez cannot be ignored or overlooked by the Court in considering the equities involved in this case.

Dot Farrar also testified that she gave Claude $3,500.00 in cash with which he opened a bank account in Poteau, Oklahoma. Claude contradicts his mother to some extent, but states that he did have the bank account. Claude further states that when W. E. Farrar, his father died, he made arrangements to pay the hospital, doctor and funeral bills, but that his mother Dot Farrar became anxious about the unpaid bills and

ran in ahead of him and paid all the bills with her own money.

The entire evidence constrains the conclusion that Claude and Inez not only did not pay the hospital and other expenses attendant upon the final illness and death of W. E. Farrar, but they have done nothing toward support other than running some errands. To the contrary they have used the $17,000.00 to pay on purchase of their own land.

Had an action been commenced by Hubert Cantwell to set aside these conveyances to the son and daughter-in-law there would have been a presumption under Arkansas law that such conveyances were fraudulent. This was and is so patent that the Court lends but little credence to the testimony that such was the purpose of consulting with an attorney about the preparation of the conveyances. In addition, the evidence discloses that Cantwell obtained a judgment against W. E. Farrar, but that the judgment was promptly compromised and settled without Claude or Inez paying any part.

This case concerns only the possibility of fraud as between the mother, Dot Farrar, and her son Claude and his wife Inez. It concerns a mother 73 years of age with a multitude of idiosyncracies; her son who has had impediments from birth and a daughter-in-law who has been through the Kincheloe case experience. The conveyances were without consideration, and Claude and Inez have failed to support Mrs. Dot Farrar and pay the expenses of the last illness and funeral of W. E. Farrar. Another very important consideration is that even though Claude and Inez Farrar claimed to own the property, they permitted W. E. Farrar and Dot Farrar to have all the income from it. Mr. and Mrs. W. E. Farrar received all the rental income from the Arkansas property and have continued to operate the store. We note that there would probably have been no income from one of the rent houses if Claude and his family had not repaired it. Johnny, son of Claude and Inez, has regularly paid Dot Farrar a rental from the Oklahoma property. Claude and Inez do not even claim to own the cattle, but think a note they call the "cattle note" should be paid from the proceeds of sale of the Dot Farrar cattle.

This case is an equity problem governed by the law of Arkansas and presents a problem where this court must fashion an equitable solution.

*27 Am.Jur.2d 624, "Equity" § 103 is* as follows:

"The power of equity is said to be coextensive with the right to relief; it is as broad as equity and justice require. In the administration of remedies, an equity court is not bound by the strict or rigid rules of the common law; on the contrary, the court adapts its relief and molds its decrees to satisfy the requirements of the case and to protect and conserve the equities of the parties litigant. The court has such plenary power, since its purpose is the accomplishment of justice amid all of the vicissitudes and intricacies of life. It is said that equity has always preserved the elements of flexibility and expansiveness so that new remedies may be invented or old ones modified in order to meet the requirements of every case and to satisfy the needs of a progressive social condition. In other words, the plastic remedies of equity are molded to the needs of justice and are employed to protect the equities of all parties, and the flexibility of equitable jurisdiction permits innovation in remedies to meet all varieties of circumstances which may arise in any case."

*§ 105 at page 626* is as follows:

It is impossible to enumerate all the special kinds of relief which may be granted by equity, or to place any bounds on the power of equity courts in shaping relief in accordance with the circumstances of the case. Since the nature and incidence of proprietary rights and interests, and of the circumstances attending them, and of the relations arising from them, are practically unlimited, the kinds and

forms of specific relief applicable to these circumstances and relations are likewise practically unlimited."

*Arkansas is in accord with these doctrines of equity.*

In the case of Renn v. Renn, 207 Ark. 147, at 154, 179 S.W.2d 657, at 661 (1944) McFaddin, J. said:

"* * * equity must always be as astute in preventing fraud as corrupt minds are in conceiving it. A court of conscience must keep the granted relief abreast of the current forms of iniquity. We should never naively refuse relief against fraud simply because there is no similar instance of such fraud in any of the books."

And at page 316 of Vaughan v. Sutton, 236 Ark. 310, 365 S.W.2d 863 at page 867 (1963) Harris, C. J. said:

"* * * equitable relief should not be refused because of technical distinctions, where the evidence firmly establishes that fraudulent acts have been committed, and equitable principles violated."

And it is well established that:

"Where Equity takes jurisdiction, it does so for all purposes."

K. C. Southern Transport Co. v. A. B. Freight, 231 Ark. 779, 332 S.W.2d 493; Askew v. Murdock Acceptance, 225 Ark. 68, 279 S.W.2d 557; Conner v. Heaton, 205 Ark. 269, 168 S.W.2d 399; Goodman v. Powell, 210 Ark. 963, 198 S.W.2d 199.

The case of Fisher v. Sellers, 214 Ark. 635, 217 S.W.2d 331 has been cited, in particular, the language at page 640, 217 S.W.2d at page 334, where Judge McFaddin said:

"Therefore, we remand this cause to the Chancery Court, to allow the parties an opportunity to readjust themselves * * *"

The Court finds that the parties to this action should readjust themselves and should do so in the following manner:

1. The defendants Claude and Inez Farrar should convey back to Dot Farrar title to all concerned lands in Arkansas. This includes store and rent houses.

2. The defendants Claude and Inez Farrar should convey the cattle back to Dot Farrar and deliver same to her at time and place designated by her. This covers all the Dot Farrar cattle including the 19 cows, 19 heifers, 5 calves, 1 bull and any other increase of said herd.

3. The defendants Claude and Inez Farrar will execute to Dot Farrar proper conveyance of a life estate in the Oklahoma land subject to a lifetime lease from Dot Farrar to Claude and Inez Farrar wherein the lease rental is $720.00 per year, the rent for 1971 now due and on January 1st hereafter. The defendants will keep the taxes paid and the improvements insured for at least $8,000.00.

Should Dot Farrar refuse to execute the lease as herein provided then the defendants shall be excused from the provisions of this paragraph No. 3.

On the other hand, should the defendants, Claude and Inez Farrar fail or refuse to comply with this portion of the decree, judgment shall be entered in favor of Dot Farrar against them for $17,000.00.

4. Title to pickup truck be reconveyed to Dot Farrar.

5. Any and all antique furniture be returned to Dot Farrar.

6. Defendants pay costs of this action.