GOODMAN v. POWELL.

4-8034                                                    198 S. W. 2d 199

Opinion delivered December 23, 1946.

964

[redacted]

*W. F. Reeves,* for appellant.

*J. E. Simpson,* for appellee.

HOLT, J.   This action was begun by appellees against "the Unknown Heirs of the Estate of W. L. Crockett, deceased, Loy Coxsey, Administrator of the Estate of W. L. Crockett, Albert Clark and George Goodman." They alleged in their complaint, among other things, that appellee, Jesse Powell, "as representative of Carroll county, is the duly elected, qualified and acting County Judge of Carroll county, Arkansas." That the appellees, A. B. Collier, Bob Travis and Efton Smith, are residents of Carrollton, Carroll county, Arkansas, and are citizens and taxpayers of Carroll county.

"That in the years of 1869 to 1871 petitions were presented to the county court of Carroll county for the Incorporation of the Town of Carrollton and as reflected by Mortgage Record 'A,' page 39, Deed Record 'A,' page 81, dated April 9th, 1869, and 1876, respectively, the Town of Carrollton was incorporated and the public square and the streets and alleys as indicated upon said plat were dedicated to the town of Carrollton as a public square and as public streets, and all property adjoining said streets, alleys and public square has since been conveyed by lots and blocks and the streets, alleys and public square have been used for public purposes and are public property. . . ."

That "this tract of land was carried on the tax books as Block 8, Public Square, and no taxes were assessed against it and none collected from the incorporation of the Town of Carrollton, as aforesaid, until and including the year of 1908. In the year of 1909, as indicated by the tax records, this tract of land was placed on the tax records as block 8 of the Town of Carrollton in the name of W. L. Crockett at a valuation of $5.00, and W. L.

Crockett paid the taxes on it from that date until 1940, and since then has been paid by Clark and Goodman, the defendants herein.''

They further alleged that·the property involved here, block 8, dedicated as a ''Public Square'' had been since its dedication public property, has been so used by the public to the present time, was never subject to taxation, ·was erroneously and illegally placed upon the tax books, that the deed from the State to W. L. Crockett (now deceased) of May 10, 1909, the deed from Crockett's executor to appellant, A. B. Clark, and the deed from Clark to appellant, George W. Goodman, to this public square, are all void, and prayed for their cancellation and for all other proper and equitable relief.

Appellant, Goodman, filed demurrer in which he alleged in effect that plaintiffs were improper parties to bring the suit and that the trial court was without jurisdiction. The court overruled the demurrer whereupon appellants, Goodman and Clark, filed separate answers interposing a general denial and affirmatively setting up the defense that the property involved, block 8, had long since ceased to be used by the public as a public square, for which it had been dedicated, and had been abandoned.

Upon a trial, the court found all issues in favor of appellees, and from the decree comes this appeal.·

The following facts were stipulated: ''It is agreed that block 8 of the Town of Carrollton, is the identical property upon which a county courthouse for Carroll county, Arkansas, was erected and maintained from 1836 to 1868, and that during that time Carroll county exercised control of that portion of the property on which the courthouse stood; that in 1868 a survey was made of that tract of land known as the Town of Carrollton and a plat carrying streets, alleys, lots and blocks was filed for record in Carroll county, Arkansas, Mortgage Book A, page 39, and Mortgage Record Book A, page 81. That incorporating petition and order incorporating the Town

of Carrollton as per the plat and survey was entered and recorded, filing as indicated by the certified copy hereto attached.

"It is agreed that the courthouse in Carrollton was destroyed by fire in 1868, and there has been no courthouse on this ground since that date. It is agreed that a copy of the record of the plat of the Town of Carrollton be attached to this agreement as Exhibit B.

"It is also agreed that since the date of the filing of the plat and the record of the incorporation of the Town of Carrollton the property entered as Exhibit B has been recognized by lots and blocks on the tax record of Carroll county and that all property conveyances within that area has been conveyed by lots and blocks to and including the present time; that the tax records of Carroll county indicate that for the year of 1908, and prior thereto, this property block 8, was carried as the public square in the Town of Carrollton, without an assessed valuation thereon, being indicated as not owned by any person; that in 1909, the same property appeared on the tax books in the name of W. L. Crockett, assessed at a valuation of $5, and that W. L. Crockett and his grantees have continuously paid the taxes on this property from 1909 to and including 1945.

"It is agreed the records reflect that in 1896, said block 8 was assessed for taxes and taxes were extended against it, and was sold for taxes for the year 1896, in June, 1897, to the State of Arkansas and thereafter duly certified to the State of Arkansas as forfeited for the nonpayment of taxes. It is agreed that on May 10, 1909, W. L. Crockett purchased said block 8 from the State of Arkansas, which deed is on record in Deed Record Book 48, page 543, of the records of Carroll county, and copy thereof may be used as exhibit herein, and that a copy of any and all records indicated by this stipulation may be attached to and become a part hereof."

For reversal, appellants first contend that appellees were not proper parties to institute the suit. We cannot agree. We think it clear that the right of appellees to

sue is provided under § 1314 of Pope's Digest, which is as follows: ·'Where the question is one of a common or general interest of many persons, or where the parties are numerous, and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all.'' Such was the effect of our holding in the recent case of *Conner* v. *Heaton*, 205 Ark. 269, 168 S. W. 2d 399.

They next question the jurisdiction of the court below. We think this contention untenable for the reason that the allegations of appellees' complaint are to the effect that the public square involved here was dedicated for a public use, or for the public interest, which presents a trust relationship, or a matter that savors of a trust. The principles of law announced in the *Conner* v. *Heaton* case, *supra*, apply with equal force here. We there said: ''In the case of *Horstmann* v. *LaFargue*, 140 Ark. 558, 215 S. W. 729, this court, quoting with approval from Pomeroy Eq. Jur., § 181, said: 'If the controversy contains any equitable features, or requires any purely equitable relief, which would belong to the exclusive jurisdiction, by means of which a court of equity would acquire, as it were, a partial cognizance of it, the court may go on to a complete adjudication, and may thus establish purely legal rights, and grant legal remedies, which would otherwise be beyond the scope of its authority,' and in vol. 8, R. C. L. 911, § 37, the author says: 'Inasmuch as a court of equity has jurisdiction of all matters which savor of trusts, it is the proper tribunal in which to seek to enforce or preserve the beneficial interest of the public obtained through a dedication,' and the rule is well settled that 'when equity acquires jurisdiction of a cause for one purpose under *bona fide* allegations, all matters at issue will be adjudicated and complete relief afforded.' ''

In *Davenport* v. *Buffington et al.*, 97 Fed., p. 234, 46 L. R. A. 377, the Circuit Court of Appeals for the 8th Circuit, in considering the rights of a resident and taxpayer in a city or town in property used by the public for park

purposes, said: "Has he no interest in the right of the public to the free use of these commons sufficient to enable him to maintain a suit in equity to prevent the destruction of his right to use them, the spoliation of the parks, and their appropriation to private use? Let us see. The title to the lands in these parks, subject to the right of the inhabitants and taxpayers of the town to use it forever for park purposes, is without value. It is nothing but a naked legal title held in trust for the people who use, or have a right to use, the parks. The real value of the lands in the parks is the value of the right to use it, . . . Thus, by the sale of the parks, the resident taxpayer . . . is deprived of his share in the valuable right to use them. . . . Now the enforcement of trusts is one of the great heads of equity jurisdiction. The land in these parks, if it was really dedicated to the use of the public for park purposes, is held in trust for that use, and courts of equity always interfere at the suit of a *cestui que trust* or a *cestui que* use to prohibit a violation of the trust, or a destruction of the right of user, . . . and the inevitable conclusion is that his interest in them is ample to enable him to maintain a suit in equity to prevent their diversion to private uses."

Finally, appellants argue that the public square has been abandoned for public use. This is a fact question, and unless we can say, under our long established rule, that the findings of the trial court were against the preponderance of the testimony on this issue, we must affirm. In *Frauenthal* v. *Slaten*, 91 Ark. 350, 121 S. W. 395, this court said: "The law bearing on the question of dedication of property to the public use is well settled by the decisions of this court. An owner of land, by laying out a town upon it, platting it into blocks and lots, intersected by streets and alleys, and selling lots by reference to the plat, dedicates the streets and alleys to the public use, and such dedication is irrevocable. . . . The word 'square' as used on a plat to designate a certain portion of ground within the limits of a city or town, indicates a public use. This is said to be the proper and

settled meaning of the term in its ordinary and usual signification.''

The general rule on Abandonment is thus announced in 26 C. J. S., under the general topic ''Dedication,'' § 62, p. 150, as follows: ''While prescription does not run against the right of the public to the use of land dedicated for such use, see Adverse Possession, § 14, yet it may by abandonment relinquish its rights to the land dedicated. Where there has been an abandonment or forfeiture of all rights to dedicated property, an injunction will lie against a municipality to prevent it from taking possession of and using the property for the purposes for which it was dedicated. The question of abandonment is one of fact to be determined by the circum- stances of each case, or, according to some decisions, a mixed question of law and fact. The burden of proving abandonment is on the party who asserts it; and it should be established by a preponderance of the evidence.''

It appears that there is little, if any, dispute as to the material facts in addition to those above stipulated.

The trial court made certain findings, from which we quote: ''Since the filing of the plat, dedication order and since the last courthouse was destroyed by fire in 1868, the town of Carrollton has had possession of the Public Square, exercised control over it as public prop- erty, used it exclusively for public and school purposes, for a public parking ground, public athletic ground, for a place of public religious worship, for public shows, and in connection with the school grounds of School District No. 15, as an athletic ground for the school, and no indi- vidual has ever since 1836 exerted any ownership or claimed any ownership or possession of said lands, ex- cept such as had been, as hereinbefore stated, as a result of the tax deed of W. L. Crockett.''

Without attempting to detail the evidence, it suf- fices to say that after reviewing it, we think the prepon- derance thereof is not against these findings of the trial court, which are to the effect that no abandonment has

been shown. The court further found ''that the property never was subject to taxation and should never have been placed upon the tax books as taxable property, and that the tax sale of 1897 for nonpayment of taxes of 1896 was void, the tax deed from the State to W. L. Crockett in 1909 was void, the deed from Loy Coxsey, as Executor of the Estate of W. L. Crockett was void, and A. B. Clark to defendant, Goodman, was void and Goodman acquired no title to said lands by reason of said deed.''

There was a decree accordingly.

We find no error and the decree is in all things affirmed.