Jerald V. NIETERT, Doris A. NIETERT,
Husband and Wife; C. L. GOODWIN
and Alice GOODWIN, Husband and Wife *v.*
CITIZENS BANK & TRUST COMPANY
of Van Burean, Arkansas

77-396                                    565 S.W. 2d 4

Opinion delivered April 17, 1978
(Division I)
[Rehearing denied May 22, 1978.]

*Hershel W. Cleveland*, of *Hixson & Cleveland*, for appellants.

*Carl Creekmore* and *Lonnie Batchelor*, for appellee.

GEORGE HOWARD, JR., Justice. The fundamental issue for resolution in this case is whether rescission of a real estate mortgage, because of the failure of the lender to disclose to debtors their right to rescind the transaction until midnight

of the third business day following the closing of the transaction, as required under the Federal Truth-in-Lending Act, should be conditioned on repayment or offer of repayment of the funds advanced to the debtors.

## THE FACTS

Appellants, Jerald V. Nietert and Doria A. Nietert, his wife, entered into a contract with appellants, C. L. Goodwin and Alice Goodwin, his wife, on April 19, 1973, to purchase a farm consisting of 104.75 acres in Logan County, Arkansas. At the time, Farmers Cooperative of Arkansas and Oklahoma held a mortgage on the premises which had been given by the Goodwins. Farmers Cooperative had, subsequently to its execution, assigned the mortgage and note to appellee, Citizens Bank & Trust Company of Crawford County.

On June 5, 1974, a representative of appellee, S. D. White,[1] visited the home of appellants and presented, for appellants' signatures, a note, payable on demand, in the sum of $107,729.87 with interest at the rate of 9 1/2% per annum, a real estate mortgage covering the farm in question, a security agreement involving certain personal assets and a financing statement. A written notice of right of rescission, prepared in accordance with the Federal Truth-in-Lending Act, dated May 31, 1974, was signed by C. L. Goodwin and Jerald V. Nietert as well as another document designated as a disclosure statement. It is admitted by appellee that the wives of Goodwin and Nietert did not execute the right of rescission document nor was a copy delivered to them.

A contract for the purchase of chickens from Ken Ballew Hatcheries, Inc., was also executed by C. L. Goodwin and Jerald V. Nietert, Farmers Cooperative and Ken Ballew Hatcheries, Inc.[2]

---

[1]The evidence reflects that S. D. White served as credit manager for Farmers Cooperative and was also serving in the capacity as vice president in charge of agricultural credit for appellee at the time in question.

[2]The $107,729.87 note was to be applied as follows: (a) $77,729.87 represented the renewal of a note executed by the Goodwins on July 24, 1973, in the sum of $94,577.08 with a balance due in the sum of $77,729.87; (b) the balance in the sum of $30,000.00 represented a cash advance to appellants to purchase 30,000 hens from Ken Ballew Hatcheries, Inc.

On February 5, 1976, there existed a balance due on the note in the sum of $96,704.78. Appellee-plaintiff made demand for payment which was refused by appellants.[3]

However, the attorney for appellants on May 3, 1976, wrote the following letter to Dane Riggs, president of appellee-bank:

"Dear Mr. Riggs:

"As you are now aware, Mr. J. H. Evans and myself represent Mr. and Mrs. Jerald V. Nietert and Mr. and Mrs. C. L. Goodwin in regard to that certain transaction between our clients and the Citizens Bank and Trust Company on June 5, 1974.

"It is our clients' position that the Notice of Right of Rescission as required by Regulation Z as amended, the Truth and Lending Act as amended, Section 226.9 was not furnished to the Nieterts and the Goodwins as required by law. Our clients therefore do hereby elect to rescind and cancel the aforesaid transaction entered into the Citizens Bank and Trust Company on June 5, 1974.

"The exercise of this Right of Rescission renders the entire transaction void and voids any security interest which the Citizens Bank and Trust Company might have had by virtue of this transaction. Furthermore, our clients are not liable for any finance charges which have accrued since June 5, 1974. *Our clients are obligated, however, to return the original principal amount of the loan advanced after having received full credit for all payments made since June 5, 1974.*

"Please advise as to the total payments that Citizens Bank and Trust Company have received since June 5, 1974, on said indebtedness, so that we may calculate the amount of refund owed by our clients to the Citizens Bank and Trust Company.

---

[3]Citizens Bank of Booneville held a first mortgage on the lands in question pursuant to a mortgage executed on July 16, 1971, by C. L. Goodwin and Alice Goodwin securing a loan in the sum of $27,548.00. This indebtedness is not in issue in this case.

"We will expect to hear from you at your earliest possible convenience." (Emphasis added)

On May 13, 1976, the following letter was sent to Mr. Riggs by appellants' attorney:

"Dear Mr. Riggs:

"I am writing this letter to confirm my previous discussions with you and Mr. Bachelor. On May 3, 1976, I advised you that Jerald V. Nietert and C. L. Goodwin were electing to rescind that certain transaction with the Citizens Bank and Trust Company on June 5, 1974.

"By this letter, I hope to clarify our position. As noted in my previous letter, *my clients are obligated to pay the original principal amount of the loan advanced after having received full credit for all payments made since June 5, 1974. However, since this will necessitate my clients obtaining a loan elsewhere, they are willing to pay interest at the rate reflected in the original note from May 3, 1976,* until the aforesaid principal amount of the note is paid. Furthermore, I will assure you that if we can reach an agreed settlement, my clients will immediately make application to the Farmers Home Administration for the necessary funds to repay this principal amount due.

"In addition to the above, at Mr. Bachelor's request, we are agreeable to extending the 10 day requirement set out in Section 226.9 an additional 15 days in order that you might further discuss this matter with your Board of Directors.

"If you need any further information, or have any questions, please contact me at your convenience." (Emphasis added)

The essential pleadings filed in this action consist of a foreclosure action filed November 22, 1976, by appellee in the Logan Chancery Court; and an answer and counterclaim filed by appellants asserting non-compliance with rescission notice provisions of the Truth-in-Lending Act as a bar to appellee-plaintiff's foreclosure action. Specifically, appellants

asserted that once notice to rescind the transaction was served on appellee, appellee had ten days in which to release all security interest in the real estate involved and having failed to do so, appellee has not only forfeited the finance charges, but is precluded from recovering the money advanced; and that appellee is entitled to a release of the security and reasonable attorney's fees.

Appellee responded to the counterclaim asserting that in conjunction with appellants' rescission notice, appellants made an offer of settlement which appellee accepted; that the settlement provided essentially that there would be a simultaneous release of security and tender of the money advanced by appellee; and that appellee has been ready and willing to satisfy the security, but appellants have not made a tender of the funds advanced as provided for in the settlement arrangement. Appellee further asserted that in reliance upon the settlement, appellee withheld its foreclosure action for several months in order to afford appellants time to secure the necessary funds to repay the money advanced.

## HOLDING OF THE TRIAL COURT

". . . [T]he proper notice of Right of Rescission under the Truth in Lending Act of the Congress of the United States . . . was not given to all the proper parties and the parties were entitled to rescind said instruments on May 3, 1976, upon tender of payment of the principal amount due, without interest or financing charges of any kind; and were entitled to have all mortgages, financing statements or other security interest satisfied and released upon Defendants tendering to Plaintiff said sum of $80,701.87. Plaintiff is now entitled to Judgment as hereinabove set out and to foreclosure of their Mortgage hereinabove described.

". . . Defendants are not entitled to attorney's fees or statutory penalties under United States Law."

## THE DECISION

### I.

### RIGHT OF RESCISSION

Relevant statutory provisions of the Federal Consumer Credit Disclosure Act, Title 15, U.S.C., § 1635 are as follows:

"(a) . . . [I]n the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, *the obligor shall have the right to rescind the transaction· until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.* The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this transaction.

"(b) When an obligor exercises his right to rescind . . ., he is not liable for any finance or other charge, and any security interest given by the obligor becomes void upon such a rescission. *Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction*[4] If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does

---

[4]Even though this schedule is inconsistent with the traditional common law requirements of rescission, Congress has the power to alter the common law. *Palmer* v. *Wilson,* 359 F. Supp. 1099 (1973).

not take possession of the property within ten days after the tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it."[5] (Emphasis added)

The evidence reflects clearly that appellee extended to C. L. Goodwin and Jerald V. Nietert the right to rescind the transaction within the meaning of the statute by delivering the necessary documents to them, but the evidence further reflects that their wives were not presented the necessary documents for rescission, nor did appellants' wives execute an acknowledgment of receipt of such documents. Consequently, appellee breached its duty to disclose to appellants their right to rescind this transaction until midnight of the third business day following the consummation of the transaction and such right continued until appellee had delivered the disclosures required.[6] *See: Gerasta* v. *Hibernia Nat'l Bank,* 411 F. Supp. 176 (1975).

While the evidence in this case established that appellants advised appellee, by communication dated May 3, 1976, and May 13, 1976, that appellants were rescinding the transaction, appellants on the other hand, proposed an offer of settlement on terms and conditions that are contrary to the statutory scheme of the Truth-in-Lending Act. Under the statute, where an obligor exercises his right to rescind, he is not liable for any finance or other charge, and any security interest given by the obligor becomes void upon such a rescission. Within ten days after receipt of notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment or otherwise, and shall take any action necessary to reflect the termination of any security interest created under the transaction. Upon the

[5]The congressional declaration of the purpose of the disclosure requirements is to aid consumers in deciding for themselves the reasonableness of credit charges imposed and to enable them to effectively shop for credit. *Mourning* v. *Family Publications Service, Inc.,* 449 F. 2d 235 (1971).

[6]In 1974, the act was amended to provide that an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs earlier, notwithstanding the fact that the disclosures required have not been delivered to the obligor.

performance of the creditor's obligation under the Act, the obligor shall tender to the creditor the property received under the transaction. If the creditor does not take possession of the property within ten days after tender, ownership of the property vests in the obligor without obligation to pay for it.

The evidence also reflects that the appellants made application for loans at five financial institutions — Citizens Bank of Booneville, First National Bank at Paris, First National Bank of Fort Smith, American National Bank at Charleston and Federal Land Bank — seeking to secure funds with which to repay the principal sum due appellee, but these applications were all denied. It is clear that appellants have now changed their posture with reference to the settlement offer made and accepted by appellee by insisting now that they are not willing to repay any principal due appellee because appellee-bank did not release the security within ten days after notice of rescission in accordance with the Act. It is readily obvious that appellants did not have the necessary funds, nor were there any prospects for securing funds to repay the money advanced by appellee. Consequently, in desperation, appellants seek to invoke the statutory scheme to the detriment of appellee by endeavoring to free the assets of appellee's lien and leaving appellee without any protection whatsoever. A court of equity cannot close its eyes to such an invidious scheme disguised in the name of consumer protection which has as its main objective to defeat the security interest of a creditor who has cooperated with the debtor fully and even during trial offered to withhold action on its foreclosure suit in order to give appellants additional time to secure funds to pay appellee.

In this case, the appellants-obligors requested the appellee-creditor to apply all sums paid by appellants as credit to funds received by appellants instead of refunding these funds to appellants, as required by law. In addition, appellants advised appellee, in effect, to disregard the time schedule contained in the Act for the performance of the creditor's duties since appellants will need time to arrange a loan in order to repay the money advanced by appellee. Moreover, appellee's vice president testified that appellee-bank accepted the offer of settlement and readily acknowledged that as a consequence of appellee's failure to

disclose the right to rescind to the wives of appellants, appellee had forfeited the finance charges and would be entitled only to the funds advanced. The vice president also testified as follows:

"Q. I'll ask you, have you as president of the bank offered and been willing, ready, and able since May 13, 1976 to satisfy every security instrument you have upon payment of the balance due?

.   .   .

"A. Yes, sir, the principle (sic) with interest from May the 3rd, 1976, we offered to do that.

.   .   .

"Q. Since he asked you, Mr. Riggs, were you willing to satisfy or release those documents at any time on payment of the principle (sic) balance due?

"A. That was the jest (sic) of every conversation that we had, commencing with the March conversation of '76 in which Mr. Nietert . . . and Mr. Lippard were present. It's been the jest (sic) of every conversation that I've had subsequent to that. The problem has been apparently that Mr. Nietert has been unable to obtain the funds from whatever source to pay the indebtedness with."

Under the circumstances existing in this case, we conclude that the trial court's holding that appellants were not entitled to a release of the mortgage until appellants had tendered payment of the principal amount due without interest and finance charges is supported by a preponderance of the evidence. *See: LaGrone v. Johnson,* 534 F. 2d 1360 (1976).

The facts in this case are to be distinguished from those in *Sosa v. Fite,* 498 F. 2d 114 (1974) where the Court granted a right of rescission without requiring a tender or offer of tender of the principal sum due by the debtor. There the debtor served a notice to rescind and insisted that the statutory scheme be followed. Moreover, the Court in *Sosa,* found that even after the debtor had elected to rescind the transaction, the

creditor refused to respond to the notice of rescission and steadfastly refused to perform his obligations required under the Act. Furthermore, the Court in *Sosa* also found that the creditor there was one of dubious reputation; and his workmanship in connection with repairs and improvements made on the home of the debtor was of poor quality. In the instant case, appellee-creditor readily acknowledged, upon receipt of notice of rescission, that it was entitled only to the principal sum advanced and stood ready and willing to satisfy the security upon payment of the principal sum in accordance with the settlement offer made by the debtors.

## II.

## ATTORNEY'S FEES

Under § 1640(a), U.S.C., it is provided, in pertinent part, as follows:

"(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

"(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

"(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court."

In *Sosa v. Fite*, 498 F. 2d 114 (1974), the Court gives a cogent and comprehensive analysis of the provisions in the Federal Truth-in-Lending Act calling for attorney's fees. In relevant part, the Court said:

". . . [W]e begin with the settled proposition that congressional goals underlying the Truth-in-Lending

Act include the creation of 'a system of private attorney generals who will be able to aid the effective enforcement of the Act.' . . . Thus, an individual suit on a private cause of action under Truth-in-Lending may nonetheless have public dimensions, since successful efforts directed toward vindicating private rights will aid in bringing about compliance with the regulatory scheme. . . . Additional public-related benefits are provided by the *stare decisis* effect successful litigation may have entitling others to statutorily provided relief. . . . Sosa has therefore effectuated a strong congressional policy and is entitled to attorneys' fees, in the exercise of the court's discretion, even though the statute sued under does not expressly provide for such an award. . . . Moreover, the fact that other parts of the same statute do provide for attorneys' fees does not foreclose an award under provisions which are silent on the matter, so long as the suit is one which vindicates congressional policy . . . ."

In *Sosa*, the creditor refused to respond to the debtor's notice of rescission and failed to recognize and abide by the plain operations of the rescission remedy. Thus, the debtor was compelled to resort to federal court for relief. Here, the creditor readily admitted its obligations under the Act and withheld foreclosure action on the note and mortgage executed by appellants pending compliance on the part of debtors with the terms of the settlement offer. After a period of several months, the appellee-creditor finally instituted its foreclosure action. Consequently, the instant case is not on all fours with *Sosa*. Moreover, there are two additional reasons why appellants are disentitled to recover attorney's fees:

1. The civil relief provided a debtor under 1640(a) has a one year limitation period which commenced from the date of consummation of the transaction. The instant transaction was consummated on June 5, 1974, and appellee's complaint was filed November 27, 1976, and appellants' counterclaim was filed August 10, 1977. *See:* Title 15, U.S.C., §1640(e). *See also: Gillis* v. *Fisher Hardware Co.,* 289 So. 2d 451 (1974), where the Court held that the one year statute of limitations contained in

this section was applicable to a counterclaim asserted in a foreclosure action.

2. The debtors in this action have not been successful in their counter action against the appellee. Therefore, it cannot be stated that the appellants have effectuated in any way a strong congressional policy.

Affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HICKMAN, JJ.