Colleen Schuldt
**TESTERMAN, Appellant,**

v.

**FIRST FAMILY LIFE INSURANCE COMPANY, an Oklahoma Corporation, and Nichols Hills Bank, an Oklahoma Corporation, Appellees,**

and

**Jon W. McHugh, Defendant.**

**No. 70798.**

Court of Appeals of Oklahoma, Division No. 1.

Dec. 4, 1990.

Rehearing Denied Jan. 28, 1991.

Certiorari Denied March 19, 1991.

Linda Bewley Burkett, Oklahoma City, for appellant.

Mark D. Mitchell, Oklahoma City, for appellee Nichols Hills Bank.

James W. Rhodes, Oklahoma City, for appellee First Family Life Ins. Co.

## MEMORANDUM OPINION

ADAMS, Presiding Judge:

Appellant Colleen Testerman (Testerman) appeals an order granting summary judgment in favor of Appellee Nichols Hill Bank (Bank), and what she initially claimed was a similar order in favor of Appellee First Family Life Insurance Company (Insurer). Her action alleged violations of Truth in Lending provisions, fraud, failure to make required payments pursuant to a credit disability policy, and charging illegal rates for credit life and disability insurance.

## THE UNDERLYING TRANSACTION

Testerman borrowed $12,161.00 from Bank on March 16, 1981 and secured the loan with a first mortgage on her homestead. On June 15, 1981, she and Bank consolidated the March loan with the proceeds of a new $4,000 loan, also secured by the homestead. The total amount financed by the consolidation loan was $19,504.20, including $3,263.20 for credit life and disability insurance premiums. The loan was payable in forty-eight monthly installments of $400 plus a $15,991.50 balloon payment due June 15, 1985.

Dealing with Defendant McHugh, who was an officer of Bank and also acted as agent for Insurer, Testerman purchased the insurance as part of the loan transaction. According to the insurance application signed by Testerman, the disability coverage provided a monthly benefit of $400.00 "for a term commencing June 15, 1981, and ending (at Midnight) 48 months thereafter". A June 22, 1982, automobile accident disabled Testerman, and she was

unable to work. Under the disability policy, Insurer paid Bank $400 per month from June 22, 1982 through June 14, 1985. When the balloon payment fell due on June 15, 1985, Insurer disclaimed any liability for that payment, and Testerman defaulted.

## TRIAL COURT PROCEEDINGS AND COMMENCEMENT OF APPEAL

Testerman filed suit on July 15, 1985, naming as defendants Insurer, Bank, and Jon McHugh. She alleged McHugh, acting as an agent of both Bank and Insurer, fraudulently misrepresented the coverage of the disability policy. She also claimed Insurer did not fully perform under that policy. On June 13, 1986, Testerman filed an amended petition, adding allegations that Bank violated Truth in Lending provisions of the Oklahoma Consumer Credit Code in the loan disclosures, and charged illegal rates for loan interest and finance charges. She also claimed Insurer had charged illegally high insurance premiums. In a pre-trial conference order dated March 23, 1987, she specifically cited the failure to advise her of the right to rescind the loan transaction as one of the disclosure violations.

On March 23, 1987, McHugh and Bank filed a motion to dismiss or, in the alternative, motion for partial summary judgment on the fraud issues. According to a journal entry reflecting a hearing on January 8, 1988, the trial court sustained Bank's motions on June 19, 1987. Although Insurer had not requested summary judgment on the fraud allegations, the January 8, 1988 journal entry finds "... there is or was no fraud worked upon Plaintiff by any Defendant herein in any transaction and that all causes or claims of plaintiff based on fraud are stricken as a basis for a claim or cause of action herein by the Plaintiff;". The journal entry reflects no judgment in favor of Insurer on Testerman's amended petition. All parties treat this entire order as if it was entered on June 19, 1987, and we will assume that to be so.

On June 25, 1987, Testerman mailed Bank formal notice of recission and filed a second amended petition, adding a claim for recission and restating her claim against Insurer for fraudulent concealment of correct insurance rates and overcharging. On July 17, 1987, Insurer moved to dismiss any Testerman claims based upon fraud, citing the trial court's June 19, 1987 order. On July 24, 1987, Testerman responded, agreeing to strike all fraudulent concealment allegations against Insurer, but specifically retaining the remaining allegations. On July 31, 1987, Insurer answered the second amended petition, and Insurer did not appear again in this record. The record contains no order by which the trial court disposed of Testerman's remaining allegations against Insurer, or, for that matter, disposed of Insurer's Motion to Dismiss.

Meanwhile, both Bank and Testerman filed motions asking for summary judgment on the recission issue. After a hearing on January 8, 1988, the trial court held Testerman's recission claim time-barred by 14A O.S.Supp.1982 § 5–204. The trial court also held Testerman's claim for statutory damages for disclosure violations was barred by the statute of limitations. The trial court granted Bank judgment on its cross-petition seeking foreclosure of its mortgage, and reserved the issue of attorney fees for subsequent hearing. Finally, on March 18, 1988, the trial court granted attorney fees to Bank.

Testerman filed a petition in error on April 15, 1988, naming Bank as Appellee. On October 26, 1988, she amended her petition in error, adding Insurer as a named appellee. McHugh has not been made a party in this appeal.

## APPELLATE JURISDICTION

■ Insurer contends Testerman amended her petition in error too late to preserve review concerning Insurer. After our initial review of the record, this court noted the absence of an order reflecting a judgment or other final order on Testerman's claim against Insurer. Both parties were ordered to address this issue and offered the opportunity to correct the record by supplying such an order if one had been

entered. While both parties have responded, neither Testerman nor Insurer have taken any steps to correct the record or supply the missing order. Accordingly, we must determine our jurisdiction based upon the record available to us. As noted previously, even if the trial court's June 19, 1987 order is treated as a summary adjudication of Testerman's fraud claims against Insurer, and we do not believe it should be so treated, on this record other aspects of Testerman's claim, all arising out of this same transaction, remain unresolved.

A judgment is pronounced when all the issues between the parties in one entire cause of action have been resolved. *Eason Oil Co. v. Howard Engineering*, 755 P.2d 669 (Okl.1988); *J.E. Spencer & Associates, Inc. v. Custom Airmotive, Inc.*, 761 P.2d 1297 (Okl.App.1988). Under this rule "... a cause of action includes all theories of recovery or types of damages stemming from one occurrence or transaction." *Mann v. State Farm Mutual Auto Ins. Co.*, 669 P.2d 768, 772 (Okl.1983). No matter how we may characterize the trial court order striking the fraud allegations, under this authority that order is not a judgment in favor of Insurer.

Even if Testerman's fraud claim may be treated as distinct from her overcharge and failure to pay claims, any order disposing of only the fraud claims would still not be appealable. An order which disposes of less than all of multiple claims which address themselves to rights arising from a single occurrence or transaction is not appealable. *Eason Oil Co. v. Howard Engineering*, 755 P.2d at 672. Since the record reflects no appealable order as to Testerman's dispute with Insurer, her attempted appeal as to Insurer must be dismissed as premature.

■ These principles also dictate the denial of Bank's request for dismissal. Bank contends Testerman's petition in error came too late to obtain review of the June 19, 1987 order. Even though the trial court granted "summary judgment" on the fraud claim, there remained additional issues between Bank and Testerman arising out of this same transaction. The June 19, 1987 order was not appealable. After the trial court finally resolved the remaining substantive issues on January 8, 1988, reserving the issue of attorney fees, Testerman had two options. She could have appealed at that time, or waited until the trial court ruled on the attorney fee issue. She opted for the latter course, and her petition in error, filed within thirty days of the trial court order granting attorney fees, timely invoked appellate jurisdiction over all the trial court's rulings. See Rule 1.11(d)(2), Rules of Appellate Procedure in Civil Cases, 12 O.S.1981, Ch. 15, App. 2.

## THE FRAUD CLAIMS

■ Testerman claims the trial court erred in determining the evidentiary materials showed no controversy as to her fraud allegations. Summary adjudication is proper only when there is no substantial controversy as to any material facts, and when those undisputed facts would lead reasonable minds to but a single conclusion which would entitle the party to judgment as a matter of law. *Mengel v. Rosen*, 735 P.2d 560, 562 (Okl.1987).

■ The elements of fraud are: (1) the actor made a material representation which was false; (2) the actor knew of the falsity when the representation was made; (3) the representation was made with the intention that the plaintiff act upon it; and (4) the plaintiff acted in reliance on the representation and, thereby, suffered detriment. *Silk v. Phillips Petroleum Co.*, 760 P.2d 174 (Okl.1988). A misrepresentation may occur when one conveys a false impression by failing to disclose the entire truth. *Uptegraft v. Dome Petroleum Corp.*, 764 P.2d 1350 (Okl.1988). However, every failure to disclose a material fact does not result in a false representation. The duty to speak can be determined only after considering the situation of the parties and the matters with which they are dealing. Failure to speak is fraud only when there is a positive duty to speak, and the actor remains silent to his benefit and to the detriment of the plaintiff. *Silk v. Phillips Petroleum Co.*, 760 P.2d at 179.

■ In support of its motion, Bank cited the application for disability insurance and the policy which showed the coverage was for up to 48 monthly payments of $400. Had Testerman read the policy and application she would have known the disability policy would only pay up to $19,200 (48 payments of $400), while the loan payments totaled $34,791.50.

Testerman presented no evidentiary materials tending to show McHugh represented the disability policy would pay off the entire debt. At best, her deposition testimony shows her fraud allegations are based on her general belief that the disability policy would cover the entire debt.[1] She contends McHugh should have told her it did not, and that, under *Silk*, his silence constituted misrepresentation.

Bank's evidentiary materials establish this transaction as a normal consumer loan. Although arguing Bank had a fiduciary duty to her, Testerman presented no evidentiary materials establishing circumstances giving rise to such a duty. Testerman has cited no authority, nor have we noted any, establishing such a duty in these factual circumstances. In the face of the uncontroverted evidence that had Testerman read the application she would have known the balloon payment would not be covered, the trial court did not err in summarily adjudicating Testerman's fraud claim.

---

1. We reach this conclusion only after our examination of Testerman's actual deposition testimony. Bank's inaccurate representation of that testimony in its briefs in the trial court and on appeal only made our task more difficult. For example, the texts of Bank's briefs give the following as Testerman's deposition testimony:

> Q. Now, on the disability insurance; what did you think that it would pay if you purchased the credit disability insurance, which you did purchase?
> A. I thought it would pay off, too.
> Q. Pay off what?
> A. The loan on my home.
> Q. Who told you that?
> A. I can't say for sure; I don't know.

The deposition transcript shows this section as:

> Q. Okay. Now, on the disability insurance; what did you think that it would pay if you purchased the credit disability insurance, which you did purchase?
> A. I thought it would pay off, too.
> Q. Pay off what?

## DISCLOSURE VIOLATIONS

Testerman also argues the trial court erred in finding her claim for statutory damages for disclosure violations barred by the statute of limitations. The limitation in effect on the date of this transaction, 14A O.S.1981 § 5–203(6), required actions to recover statutory damages for these violations to be filed within one year of the violation. It is uncontroverted that all the alleged disclosure violations occurred on June 15, 1981. Testerman's claim for statutory damages for these violations was clearly out of time, and the trial court did not err in summarily adjudicating that claim.

## RECISSION

■ At the time of this loan, 14A O.S. 1981 § 5–204 provided, in pertinent part:

> (1) .... in the case of a consumer credit sale or consumer loan with respect to which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in an interest in land which is used or expected to be used as the residence of the person to whom credit is extended, the debtor shall have the right to rescind the transaction until midnight of the third business day following the consummation of

> A. The loan on my home.
> Q. Who told you that?
> A. Well, John McHugh is the only one I come in contact with.
> Q. Well, what did he tell you about the credit disability insurance, specifically?
> A. I can't say for sure. I was just led to believe that it would pay off. As far as the words concerned, I can't just tell you word for word; I don't know.

Another portion of the briefs' texts list the following as Testerman's testimony:

> Q. ... Try to remember exactly what he said about this insurance.
> A. I think he just asked me if I wanted credit life and I told him yes.

The transcript has the exchange:

> Q. And try to remember exactly what he said about this insurance.
> A. I don't think he went into detail. I think he just asked me if I wanted credit life and I told him yes. Accidental—disability is what I'm trying to say.

the transaction or the delivery of the disclosures required under this section and all other material disclosures required by this act, *whichever is later* ... The creditor shall clearly and conspicuously disclose ... the rights of the debtor under this section ...

(2) When a debtor exercises his right to rescind under subsection (1), he is not liable for any credit service charge, loan finance charge or other charge, and any security interest given by the debtor, including any such interest arising by operation of law, becomes void upon the recission. Within ten (10) days after receipt of notice of recission, the creditor shall return to the debtor the money or property given as earnest money, down payment or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction ... [Emphasis added.]

After this loan, the Legislature amended the statute to terminate the right to recission, even if no disclosures were made, no later than "three (3) years after the date of consummation of the transaction...." 14A O.S.Supp.1982 § 5–204(1). Bank argues the amended statute applies to Testerman's loan, and that her notice of recission came too late. Testerman argues she had a vested and accrued right to rescind which was not extinguished by the subsequent legislative action. We agree with Testerman.

Recission is a contractual right which vested and accrued at the execution of the loan documents. At that point in time, the right to rescind was fixed under the unamended version of § 5–204, and the statutory provisions became as much a part of the contract as if recited in it. *State v. Waterfield*, 167 Okl. 209, 29 P.2d 24 (1933). This right of recission does not arise only when the creditor has acted inappropriately. It is a contractual right which may be timely exercised by the debtor even if the creditor has scrupulously followed all the requirements of the law. Therefore, Testerman's right of recission was not a remedy, but a substantive right. The time limitation on exercise of that right was part

and parcel of the statute creating the right and became a substantive limitation on the right. See *Jamerson v. Miles*, 421 F.Supp. 107 (N.D. Texas 1976). Thus, the right of recission, and the time period within which it could be exercised, were substantive matters and not merely procedural or remedial. *Cf. Sanco Enterprises, Inc. v. Christian*, 495 P.2d 404 (Okl.1972) (statutory amendment affecting remedy of deficiency judgment).

■ Statutes which affect substantive rights do so prospectively only unless the Legislature has specifically provided otherwise. See *Ricks Exploration v. Oklahoma Water Resources Board*, 695 P.2d 498 (Okl.1984). Unlike in *Sanco*, where the Legislature specifically stated new limitations on creditors' remedies applied to transactions completed before the new provisions' effective date, there is nothing in the 1982 amendment of § 5–204 indicating the Legislature intended retrospective application. Testerman's exercise of her right of recission on June 25, 1987 was timely under state law.

■ Even if Testerman timely exercised her right under state law, Bank contends, she was untimely under 15 U.S.C. § 1635(f), which was in effect at the time of this loan. Section 1635(f) limits the right to recission in the same terms adopted by the Oklahoma Legislature in the 1982 amendment. Bank argues the federal law preempts Oklahoma's, and that any variance between the two results in application of the federal provisions. Oklahoma received an exemption from federal Truth in Lending requirements on June 1, 1970, and that exemption was in effect when Bank made this loan to Testerman, 12 C.F.R. § 226.55 (1981).

■ Contrary to Bank's assertion, a variance between the law of Oklahoma and federal regulations did not automatically render the Oklahoma regulatory scheme ineligible for exemption. The preemption provisions cited by Bank are contained in the 1982 "simplification" version of the federal Truth in Lending law, and were not effective until *after* this transaction. Prior

to "simplification" federal law did not require state law to provide indentical rights and duties in order to qualify for exemption from federal rules. A state could properly be exempt if its laws and the federal provisions were substantially uniform. See 12 C.F.R. Ch. II, Part 226, Supp. I (1–1–90 Edition) (discussing requirements and giving examples of state laws deemed contradictory which would trigger preemption). Testerman's right to recission is controlled by the provisions of Oklahoma law in effect on June 15, 1981. The undisputed evidence reveals Bank never disclosed her right to rescind, and consequently, Testerman timely exercised her right of recission.

■■■ Bank claims Testerman cannot rescind because she has not repaid the loan proceeds, and she removed items from the collateral. Citing *Nietert v. Citizens Bank & Trust Company*, 263 Ark. 251, 565 S.W.2d 4 (1978) and *Powers v. Sims and Levin*, 542 F.2d 1216 (4th Cir.1976), Bank correctly contends recission and release of collateral may be conditioned upon return of borrowed funds. However, in *Nietert* the debtor sought to repay the loan over time, while in *Powers* the debtors refused to repay a portion of the original loan used to retire other debts secured by the collateral.

While Bank is entitled to return of the principal sum loaned, it is entitled to no more. This principle was recognized in *Nietert* and *Powers*, and § 5–204 relieved Testerman of liability for loan service charges, finance charges, or interest, when she rescinded the contract. The undisputed evidence establishes Testerman, or Insurer on her behalf, made monthly payments on the note. Upon recission, Bank cannot retain any interest or finance charges, and must credit any payments received to repayment of the principal amount loaned, $19,504.20.

We cannot determine from this record the total payments Bank received from Testerman and Insurer. If Bank has not received full payment of the principal amount loaned, including the insurance premiums, Testerman is liable for the difference. If the payments exceed the principal amount loaned, Bank is liable to Testerman for the difference. On remand, the trial court may determine a reasonable time for completion of recission, including reasonable time limitations for payment by Testerman or Bank of any amount due the other.

## CONCLUSION

In summary, the trial court has entered no final order or judgment on Testerman's claim against Insurer, and her appeal as to Insurer is dismissed as premature. The trial court correctly determined there were no issues of material fact concerning Testerman's fraud and nondisclosure allegations against Bank. Viewing those uncontroverted facts in the light most favorable to Testerman, the trial court properly summarily adjudicated those claims in favor of Bank. However, the trial court improperly determined Testerman was "precluded" from seeking recission, and "summary judgment" on this issue and Bank's foreclosure cross-petition must be reversed. Since Bank's judgment is reversed, the order granting Bank attorney fees must be set aside as well. This cause is remanded for proceedings to effect the recission of the loan, and for such other proceedings and orders as are consistent with this opinion.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

BAILEY, J., concurs.

MacGUIGAN, J., not participating.