MIKE MURPHY, Judge
Appellants, C.D. and Kathleen Andreasen, husband and wife, appeal from the June 26, 2017 Benton County Circuit Court order that vacated South Mountain Drive (the Drive), the roadway at issue, as a public road and denied appellants the right to ingress and egress to their adjoining property via the Drive. On appeal, appellants argue that (1) the circuit court erred when it vacated the Drive as a public road, and (2) even if the circuit court is correct in vacating the Drive, they should still be entitled to access their property via the Drive. We affirm.
A summary of the evidence presented at a bench trial follows. Appellants bought forty acres of land in Benton County in 1974 that is adjacent to what would become the South Mountain Estates Subdivision in 1998. Appellants have access to all areas of their property, including the part that is adjacent to the Drive, without using the Drive. However, appellants' property contains a ravine in the area near the Drive, so accessing the "back side" of their property by way of the Drive is more convenient to them. Before the development of South Mountain Estates, a dirt roadway existed where the Drive is now located, which appellants used from time to time to fix their fence, brush hog, and generally take care of that side of their property.[1]
In 1996, the county court entered an order that identified and named six roads for a proposed subdivision; one of the roads became known as "South Mountain *264 Road."[2] After purchasing the property where South Mountain Estates Subdivision (the Subdivision) is now located, Alice Riggins and her husband caused a recorded plat of the Subdivision to be recorded in the Benton County Recorder's Office in 1998. Riggins testified that from the time they purchased the property until the plat was recorded, the area that had once been a dirt road was so overgrown that a four-wheeler was needed to access it, and there were no tracks on it. The developer of the Subdivision paid to have the Drive "black-topped," and presently the property owners' association (POA) assesses its residents and pays for maintenance of the Drive. Benton County has never maintained the Drive. The Drive is located on the southern boundary of the plat, is approximately 1400 feet long, and is approximately 50 feet wide. It is undisputed that the Subdivision is situated in Benton County outside of the corporate limits of any city or town. All twenty lots in the Subdivision have been sold.
At the time the plat was filed, the plat contained a declaration that all the streets on the plat were for use by the general public. In 2000, at least three utility easements were filed, all of which indicated that the Drive was a public road-the southern edge of the 50-foot easement of the Drive abuts the northern edge of appellants' property.[3] Alice Riggins testified that the first time she noticed the wording "public roadway" was a couple or three years before the trial date when the utility easements were presented to her. She explained that she did not intend for the road to be public because she thought she had created a private subdivision.
Riggins testified that the entrance to what is now the Subdivision contained a gate with a lock on it in 1989. Riggins paid $20,000 to replace it with a heavy wrought-iron retractable gate with a masonry wall sometime before June 2001. Appellants testified that they did not notice the existence of this gate until 2007. This new gate was left open from 6:00 a.m. to 6:00 p.m. for some time while it was broken and being repaired. It was also left open from time to time when homes were being constructed in the Subdivision. Per Riggins's testimony, the gate was basically closed at all times by 2005.
On December 11, 2007, the county court entered an order changing the street signs in the Subdivision from blue to white to indicate that the roads, including the Drive, were private.[4] Shortly thereafter, appellants and their son were able to access the gate only on several occasions either when it had been left open or when they had the code to the keypad. The Subdivision's residents use the Drive virtually every day.
Appellants filed simultaneous petitions on December 8, 2014, seven years later, in the circuit court and the county court, seeking to declare the December 11, 2007 order as void. The POA petitioned the county court on May 27, 2015, seeking to vacate the Drive as a public road, if it was even to be considered a public road. The county court held a hearing on both petitions, and the county court entered an order on July 14, 2015, denying both.[5] Both parties timely appealed to circuit court.
*265 Both appeals and appellants' original circuit court petition were all tried simultaneously on February 13 and 14, 2017. At the end of the second day of trial, the circuit court entered its oral ruling, finding that (1) the county court's December 11, 2007 order is vacated for lack of notice and a hearing; (2) the Drive was declared a public road, but appellees' petition to vacate the Drive as a public road is granted, with appellants and no other members of the public (other than Subdivision residents and a handful of third parties having recorded easements) retaining any rights to use it; and (3) the public and the appellants have abandoned whatever rights they may have had to the Drive, thereby making it private as to all but the Subdivision residents. Final orders were entered on June 26, 2017, which stated in part,
35. The Court finds that the evidence supports ... that South Mountain Drive has not been opened or actually used as a public street, alley, or roadway for a period of five (5) years within the meaning of Ark. Code Ann. Sec. 14-18-105.
....
38. The Court finds that South Mountain Drive has been used overwhelmingly only by the residents of the Subdivision and their guests for at least the previous seven years, and not by the public during that time.
39. The Court finds that South Mountain Drive has not been used by anyone other than property owners and residents of the Subdivisions [sic], their invitees and guests, and possibly the Andreasens on very few occasions since a gate was erected and closed.
40. The Court notes that the handful of times the Andreasens were able to get into the Subdivision does not constitute sufficient use of South Mountain Drive to justify it continuing to be a public road or right of way.
41. The Court finds that, to the extent these witnesses have used any portion of South Mountain Drive at all within the previous five years, such use was so sporadic and for other uses and purposes so as to be de minimis and to not rise to the level, whether individually or collectively along with the Andreasens' use, as constituting "... open or actually used as a street, alley, or roadway ..." within the meaning of Ark. Code Ann. Sec. 14-18-105.
42. The Court finds that all of the requirements contained in Ark. Code Ann. Sec. 14-18-107 in order for this Court to vacate South Mountain Drive as a public road or right of way have been met.
....
46. The Court separately finds that, to the extent that C.D. Andreasen, Kathleen Andreasen, Ron Andreasen, Don Andreasen, James Gregory, or any other person or entity (but excluding the named Plaintiffs and Petitioners) had any rights of any kind to use all or any part of South Mountain Drive, such rights have been abandoned.
Appellants then filed timely notices of appeal.[6]
When an owner of land files a plat and thereafter lots are sold with reference to it, such action constitutes an irrevocable dedication of any street or passageway for public use shown or indicated on the plat. Weisenbach v. Kirk , 104 Ark. App. 245, 248, 290 S.W.3d 614, 616-17. Title acquired by dedication to the public *266 is an easement with the fee remaining in the adjacent landowner. Id. The public's right to use a dedicated roadway extends to the whole breadth of it, not merely to the part that is constructed or actually traveled. Id. However, Arkansas Code Annotated sections 14-18-101 through 110 (Repl. 2013) provide a statutory process for vacating a dedicated roadway in platted subdivisions located outside the limits of a municipality.
The plain wording of Arkansas Code Annotated section 14-18-105, which the circuit court relies on in its order, connotes when streets and passageways have been platted but never used or, if used at one time, have not been used for a period of five years, the county court is empowered to declare such passageways closed and vacated if it finds those facts to exist. Weisenbach , 104 Ark. App. at 249, 290 S.W.3d at 617. Arkansas Code Annotated section 14-18-105 states:
In all cases where the owner of lands situated in a county and outside of a city of the first or second class or incorporated town has dedicated a portion of the lands as streets, alleys, or roadways by platting the lands into additions or subdivisions and causing the plat to be filed for record in the county and any street, alley, or roadway, or portion thereof shown on the plat so filed shall not have been opened or actually used as a street, alley, or roadway for a period of five (5) years, or where any strip over the platted lands, although not dedicated as a street, has been used as a roadway, the county court shall have power and authority to vacate and abandon the street, alley, or roadway, or a portion thereof, by proceeding under the conditions and the manner provided in this chapter.
On appeal, appellants first argue that the circuit court erred when it vacated the Drive as a public road because it erroneously applied Arkansas Code Annotated section 14-18-105.
We review issues of statutory construction de novo. Mamo Transp., Inc. v. Williams , 375 Ark. 97, 289 S.W.3d 79 (2008). The basic rule of statutory construction is to give effect to the intent of the General Assembly. Id. In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. We construe the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. Id. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. Id. However, we will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. Id. We strive to reconcile statutory provisions relating to the same subject to make them sensible, consistent, and harmonious. Weisenbach , 104 Ark. App. at 251, 290 S.W.3d at 618.
Appellants assert that per statutory construction, the language of the statute is clear: in order to vacate a public road there must be no use for five years, and because there has been use, even by the appellees, then the roadway cannot be vacated. Essentially, appellants argue that the statute requires absolutely no use by anyone for at least five years before the road can be vacated. Appellants note that the statute does not qualify the use of the road to only a certain class of people-such as the residents of the Subdivision. Rather than focus on whether to apply a broad or narrow interpretation of Arkansas Code Annotated section 14-18-105, we prefer to affirm using the common law *267 approach. See, e.g. , Fritzinger v. Beene , 80 Ark. App. 416, 97 S.W.3d 440 (2003) ("We may affirm the circuit court if it is correct for any reason.")
We rely on Goodman v. Powell , 210 Ark. 963, 198 S.W.2d 199 (1946) to hold that the method described in Arkansas Code Annotated sections 14-18-101 through 110 is not the only process for vacating a dedicated roadway. Goodman acknowledges that it is possible to abandon a dedicated public use-in that case, a dedicated public "square." While the supreme court ultimately held that no abandonment had been shown in that case, the court could have ruled otherwise. There, the supreme court held,
While prescription does not run against the right of the public to the use of land dedicated for such use, see Adverse Possession, § 14, yet it may by abandonment relinquish its rights to the land dedicated.... The question of abandonment is one of fact to be determined by the circumstances of each case, or, according to some decisions, a mixed question of law and fact. The burden of proving abandonment is on the party who asserts it; and it should be established by a preponderance of the evidence.
Goodman , 210 Ark. at 969, 198 S.W.2d at 202.
In Powell v. Miller we explained,
Although a legislative body has the power to alter the common law, Nietert v. Citizens Bank and Trust Company , 263 Ark. 251, 565 S.W.2d 4 (1978), it is a principle of statutory construction that a statute will not be construed as overruling a principle of common law, "unless it is made plain by the act that such a change in the established law is intended." White v. State , 290 Ark. 130, 136, 717 S.W.2d 784, 787 (1986) (quoting Starkey Constr., Inc. v. Elcon, Inc. , 248 Ark. 958, 457 S.W.2d 509, 248 Ark. 978A (1970) ).
Powell , 30 Ark. App. 157, 161, 785 S.W.2d 37, 39 (1990).
Based on the circumstances in our case, the circuit court made sufficient findings of unique factors that show appellees met their burden of proving abandonment by a preponderance of the evidence. We hold the following to be of particular importance: the Subdivision's POA assesses its members for maintenance of the Drive, and the POA is the entity that maintains it; every property owner within the Subdivision wanted the Drive to be private; appellants do not need to access their property from the Drive, as evidenced by the substantial work they were performing on the "back side" of their property just a few months before the trial date; and by appellants' own testimony, they used the Drive only sporadically over the years to fix their fence, "inspect their property," "pick up souvenirs," and "just generally be nosy." Further, although Arkansas Code Annotated section 14-18-105 was enacted after Goodman , the language of Ark. Code Ann. § 14-18-105 does not indicate that it was intended to overrule the common-law remedy of abandoning a dedicated roadway.
For appellants' last point on appeal, they argue that even if the circuit court was correct in vacating the Drive, it erred in finding that they had abandoned their independent right to ingress and egress. We do not agree.
Generally, when a public road is abandoned, it does not affect the private rights of occupants to ingress and egress. Sevener v. Faulkner , 253 Ark. 649, 650, 488 S.W.2d 316, 317 (1972). Here however, appellants tolerated the existence of the gate for more than seven years before they filed suit. Appellants testified that they had accessed their property by using *268 the Drive "maybe five or six" times since 2005, which is when the construction of homes was mostly completed, and the gate was closed. Based on the facts in this case, we hold appellants were on notice and failed to exercise their rights. We cannot that hold the circuit court erred in finding appellants had abandoned their rights.
Affirmed.
Gruber, C.J., agrees.
Glover, J., concurs.

The area where the Drive is presently located was once called Elston Street when the platted town of Monte Ne existed. Monte Ne was vacated in its entirety, including Elston Street, in 1984 by county court order.

The record uses "road" and "drive" interchangeably; we choose to use "drive."

The easements were necessary because the Drive "dead ends" on the west side of Lot 1, meaning it leads to and stops at Lot 1.

A blue sign indicates a residential drive.

The circuit court proceedings were stayed until the county court proceedings were concluded.

The three appeals, CV-18-65, CV-18-66, and CV-18-67 have been consolidated into CV-18-67.